MARC E. BERNSTEIN
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10022
TELEPHONE: (212) 318-6000
FACSIMILE: (212) 230-5127
EMAIL: marcbernstein@paulhastings.com

*Attorneys for Defendant Transatlantic Reinsurance Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILEANA DIAZ,<br><br>                         Plaintiff,<br><br>            vs.<br><br>TRANSATLANTIC REINSURANCE COMPANY,<br><br>                         Defendant. | 1:16-cv-01355 (GBD)<br><br><br>**DECLARATION OF MARC E. BERNSTEIN** |

        MARC E. BERNSTEIN, an attorney duly admitted to practice before this

Honorable Court, affirms and says:

        1.        I am a member of Paul Hastings LLP, attorneys for Defendant

Transatlantic Reinsurance Company.  I respectfully submit this declaration in support of

Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

        2.        Attached hereto as Exhibit A is a true and correct copy of the Complaint

filed by Plaintiff on February 22, 2016.

        3.        Attached hereto as Exhibit B is a true and correct copy of the Alleghany

Code of Business Conduct and Ethics that is quoted throughout the Complaint and that forms the

basis for Plaintiff's breach of contract claim.

4.      Attached hereto as Exhibit C is a true and correct copy of the Transatlantic Holdings, Inc. Director, Executive Officer and Senior Financial Officer Code of Business Conduct and Ethics that is quoted throughout the Complaint and that forms the basis for Plaintiff's breach of contract claim.

**WHEREFORE**, I swear under penalty of perjury, this 19th day of April, 2016, in New York, New York, that the foregoing is true and correct to the best of my knowledge.

Dated: April 19, 2016          By: _____

                                       Marc E. Bernstein

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ILEANA DIAZ,

            Plaintiff,

      v.

TRANSATLANTIC REINSURANCE COMPANY,

          Defendant.

Docket No. 16-CV-1355

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Ileana Diaz, by and through her attorneys at the Filosa Law Firm, PLLC, as and for her Complaint in this action against Transatlantic Reinsurance Company ("TransRe," the "Company," or "Defendant") alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action seeking declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1376 (2010), the Family & Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*. ("FMLA"), the New York State Human Rights Law ("State Human Rights Law"), N.Y. Exec. Law §§ 290 *et seq.*, the New York City Human Rights Law ("City Human Rights Law"), N.Y. Admin. Code §§ 8-101 *et seq.*, as well as the common law.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 78u-6(h)(1)(B)(i) and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

3. The Court also has jurisdiction over Plaintiff's claims under state and local law pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between Plaintiff, a citizen of the State of New Jersey, and Defendant, a citizen of the State of New York and this action involves a matter in controversy that exceeds the sum or value of $75,000, exclusive of interest and costs.

4. Venue is proper in the district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this district because and, at all relevant times, Defendant's principal place of business was located in this district.

## PARTIES

5. Plaintiff Ileana Diaz is a current employee of TransRe and is a resident of the State of New Jersey. At all relevant times, Plaintiff met the definition of "employee" under all applicable statutes.

6. Defendant TransRe is a domestic business corporation, organized and existing under the laws of the State of New York with a principle place of business located in the New York, NY. Defendant TransRe is a wholly-owned subsidiary of Transatlantic Holdings, Inc., which is itself a wholly-owned subsidiary of Alleghany Corporation ("Allegheny"), a publicly held corporation that issues multiple classes of securities required to be registered under the Section 12 of the Securities Exchange Act of 1934, 15 U.S.C. § 78 et seq., and is required to file reports under Section 15(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(d).

## FACTUAL ALLEGATIONS

**Plaintiff's Employment with Defendant**

7. Plaintiff is a current employee of TransRe and has been employed by Defendant for more than nine years.

8.  Defendant hired Plaintiff as a Senior Reinsurance Claims Examiner in July 2006.

9.  In September 2013, Defendant promoted Plaintiff to the position of Assistant Manager in Defendant's Claims Department with responsibility for management of Defendant's 1985 and Prior Claims unit ("1985 & Prior").

10. In this position, Plaintiff reported to Robert Rosen, Claims Manager, who in turn reported to Beth Levene, Executive Vice President and Defendant's Chief Claims Officer. Ms. Levene's responsibility also included oversight of Defendant's Human Resources department.

11. With her promotion, Plaintiff was put in the precarious position of managing and supervising the work of a number of Ms. Levene's family members. Specifically, Plaintiff was responsible for supervising work performed for Defendant by the following individuals:

a.  Wesley Sherman: Mr. Sherman is a cousin of Ms. Levene's husband, Stuart Levene, and is a current employee of Defendant. At the time that Plaintiff was promoted to manage the 1985 & Prior unit, Mr. Sherman was a Senior Claims Examiner.

b.  Cynthia Lombardi: Ms. Lombardi is a current employee of Defendant and Stuart Levene's ex-wife. Despite this, Ms. Lombardi and Ms. Levene remain close, as evidenced by the fact that Ms. Levene hired Ms. Lombardi to assist her with ongoing projects for Defendant.

c.  Stuart Levene: Mr. Levene is Ms. Levene's husband and, while not an employee of Defendant, Defendant regularly employs Mr. Levene's law firms to perform work for Defendant on litigation matters. In her position as manager of the 1985 & Prior unit, Plaintiff was ultimately responsible for supervising work performed by Mr. Levene's firm and approving bills and invoices – however, as discussed below, Ms. Levene effectively delegated that oversight to Mr. Sherman.

3

12.     As Defendant's Chief of Claims, Ms. Levene was in a position to determine which reinsurance matters Defendant would litigate, but because her husband's law firm would handle the litigation, Ms. Levene would personally benefit from any increase in these litigations or the fees that Defendant paid to her husband's law firm.

13.     Upon information and belief, Defendant paid Mr. Levene's law firm more than $13 million in legal fees in 2014.

14.     As of December 2014 when Plaintiff first reported her concerns to Defendant's Compliance Department, Plaintiff was not aware of any procedures put in place by Defendant to address the conflict of interest presented by Ms. Levene assigning litigations to and ultimately being responsible for approving invoices for her husband's law firm.

15.     Further, Plaintiff believed that the absence of any checks or balances created the potential for fraud against Defendant and its parent company.

16.     This conflict of interest was exacerbated by the fact that Ms. Levene had effectively delegated responsibility for supervision of the work performed by Mr. Levene and his law firm to Mr. Sherman – who was Mr. Levene's cousin. As a result, Mr. Sherman was in a position to sign off on legal fees paid to his cousin's law firm, with approval by Ms. Levene.

17.     Upon information and belief, it was not until June 2015 – which was after Plaintiff had first complained about this conflict of interest in December 2014 – that Defendant addressed this conflict and required that Defendant's legal department approve all invoices to Ms. Levene's husband's law firm.

18.     With respect to Mr. Sherman, Ms. Levene frequently provided Mr. Sherman with preferential treatment that was not afforded to other claims examiners. For example:

4

a. Ms. Levene frequently bypassed Plaintiff and communicated directly with Mr. Sherman – who was supposed to report to Plaintiff – regarding matters pertaining to the 1985 & Prior unit. Mr. Sherman in turn frequently excluded Plaintiff from his communications with Ms. Levene. This lack of communication with Ms. Levene made it both more difficult for Plaintiff to perform her job and had the effect of undermining Plaintiff's authority and credibility with Plaintiff's other direct reports and supervisors. These individuals saw Ms. Levene's favorable treatment of Mr. Sherman and also began to bypass Plaintiff and go directly to Mr. Sherman for issues related to the 1985 & Prior unit.

b. Ms. Levene provided Mr. Sherman with access and training that she did not provide to Plaintiff and other members of the 1985 & Prior unit. For example, on more than one occasion, Ms. Levene spent an inordinate amount of time explaining an underwriting file to Mr. Sherman, which is something that she would not have done for Plaintiff or other employees.

c. Ms. Levene provided Mr. Sherman with more exposure to other members of senior management than she did for Plaintiff or other employees in Defendant's 1985 & Prior unit. Ms. Levene also sat with Mr. Sherman and dictated emails to him to send to executives of Defendant and Allegheny, Defendant's parent company.

d. Ms. Levene hired two friends of Mr. Sherman based on Mr. Sherman's recommendation and we believe that Mr. Sherman received a referral bonus when Defendant hired these individuals.

e. In stark contrast to Ms. Levene's treatment of Mr. Sherman, Ms. Levene constantly undermined Plaintiff's efforts to manage Mr. Sherman, who was ostensibly her subordinate. For example, when conducting calendar year 2013 performance appraisals for Mr. Sherman, Plaintiff's supervisor (Robert Rosen) required Plaintiff to change Mr. Sherman's rating

from a 4 to a 5, the highest possible rating, presumably at the request of Ms. Levene because Mr. Rosen rarely worked with Mr. Sherman and had no basis to support changing Mr. Sherman's rating.

19.     In March or April 2014, Plaintiff discussed her concerns about the conflict of interest with her supervision of Mr. Sherman with her supervisor (Robert Rosen), but Mr. Rosen declined to get involved, telling Plaintiff that she was "between a rock and a hard place."

20.     With respect to Ms. Lombardi, Ms. Levene provided preferential treatment in the following manner:

        a.     Ms. Levene hired Ms. Lombardi in late 2013 to assist her with administrative tasks on a number of larger matters. At the time that Defendant hired Ms. Lombardi, it was not widely known that she had previously been married to Mr. Levene and Plaintiff believes that Ms. Levene bypassed Defendant's standard job posting requirements when she hired Ms. Lombardi for a position that was not publicly posted.

        b.     In or around March 2014, Ms. Levene assigned Ms. Lombardi to report to Ms. Diaz so that Ms. Diaz could train her to be a Claims Examiner; however, Ms. Lombardi did not have the experience and qualifications that Defendant typically requires for Claims Examiners, yet she is presumably paid a Claims Examiner salary.

21.     Plaintiff attempted to make the best of a bad situation, but Ms. Levene's preferential treatment of her family members undermined Plaintiff's ability to perform her job.

22.     While these relationships created a clear conflict of interest for Ms. Levene because they required her to oversee work performed by her husband and his law firm, as well supervision of his family members, Plaintiff does not believe that these conflicts were adequately reported to Defendant's internal audit or compliance departments. As a result, prior to Plaintiff

raising her concerns about these conflicts, Plaintiff is not aware of any internal procedures put in place to manage these conflicts of interest.

**Plaintiff's Demotion to Fast Track Unit**

23. In November 2014, Plaintiff met with Ms. Levene to have a discussion about Plaintiff's management of the 1985 & Prior unit.

24. In this meeting, Ms. Levene criticized Plaintiff's management of the 1985 & Prior unit and told Plaintiff that all of her direct reports had complained about Plaintiff's management of the unit and that Plaintiff had lost their "faith."

25. For her part, Plaintiff discussed how Ms. Levene's preferential treatment of Mr. Sherman made her job more difficult and how her supervisor (Robert Rosen) had failed to give her direction and guidance in her first management position. For her part, Ms. Levene agreed that Mr. Rosen had not effectively supported Plaintiff.

26. At the conclusion of this meeting, Ms. Levene offered Plaintiff the option of continuing on as manager of the 1985 & Prior unit, provided that Plaintiff come up with a "blueprint" of how Plaintiff was going to "turn things around," or Ms. Levene offered to transfer Plaintiff to another management position within the Claims Department.

27. Ms. Levene told Plaintiff that, while she could not provide Plaintiff with any details about this other "management opportunity," it was larger in size than the 1985 & Prior unit and would provide Plaintiff with a "fresh start."

28. Ms. Levene then asked Plaintiff to get back to her within a week regarding whether Plaintiff wanted to pursue the other management opportunity.

29.     One week later, because Plaintiff felt that her management of the 1985 & Prior unit had already been undermined by Ms. Levene's preferential treatment of Mr. Sherman, Plaintiff told Ms. Levene that she would prefer the "fresh start" that Ms. Levene had offered.

30.     At this point, Ms. Levene – for the first time – told Plaintiff that this "fresh start" was actually management of Defendant's Fast Track unit.

31.     Defendant's Fast Track unit was a pre-existing unit that processed uncontested and straightforward claims, unlike the complex and substantive claims that Ms. Diaz had worked on for her prior eight years at TransRe and had managed in the 1985 & Prior unit. As a result, this new "management opportunity" was clearly a demotion.

32.     With Plaintiff out of the way, Ms. Levene used this opportunity to continue her preferential treatment of Mr. Sherman and promoted him to Plaintiff's former position as manager of the 1985 & Prior unit. Ms. Levene also promoted Mr. Sherman to make him an Assistant Vice President, making him an officer of the Company, a title that was never given to Plaintiff when she was manager of the 1985 & Prior unit.

**TransRe's Code of Conduct & Plaintiff's Complaint to TransRe's Compliance Department**

33.     As of December 2014, TransRe had a "Director, Executive Officer and Senior Financial Officer Code of Business Conduct and Ethics" ("TransRe Code of Conduct") in place that required high-level employees, such as Ms. Levene, to avoid any conflicts of interests, which the code defined as when "an individual's personal interest is adverse to, or may appear to be adverse to, the interests of [TransRe] as a whole."

34.     The TransRe Code of Conduct also provided that "[a]ny director, executive officer, or senior financial officer who is aware of a transaction or relationship that involves, or could reasonably be expected to involve a conflict of interest should promptly disclose the

situation to the Chairman of the Board or the Chairman of the Audit Committee to determine whether the transaction or relationship is in violation of this Code or the law and appropriate steps to be taken."

35.     Despite the above-outlined conflicts of interest, Plaintiff did not believe that Ms. Levene had disclosed the full extent of the above-outlined of interests conflicts to Defendant's Compliance Department so that appropriate steps could be taken to address these conflicts of interest – these facts were later confirmed by Defendant's Human Resources and Compliance Directors who both told Plaintiff that they were not aware of Ms. Levene and Ms. Lombardi's relationship at the time that Defendant hired Ms. Lombardi and that they were not aware that Mr. Sherman was the cousin of Ms. Levene's husband until Plaintiff's December 2014 complaint.

36.     The TransRe Code of Conduct prohibited retaliation against individuals that reported violations of the code. Specifically, the Code required senior level managers to take steps to ensure that TransRe "inform[ed] employees that [TransRe] will not allow retaliation for reports made in good faith" and stated that "[TransRe] will not tolerate retaliation for violations of this Code made in good faith."

37.     The TransRe Code of Conduct encouraged employees to report potential violations of the code.

38.     In December 2014, Plaintiff met with Sandra Rushbrook, Defendant's Compliance Director, to address concerns that Plaintiff had with the above-outlined conflicts of interest regarding Ms. Levene's employment of her husband's family members and oversight of work performed by Mr. Levene's law firm for litigation matters.

39.     In her complaint, Plaintiff also raised concerns regarding whether her race/national origin was a factor in the decision to move her to the Fast Track unit. Specifically,

Plaintiff, who is Latino and was born in Puerto Rico, was moved to the Fast Track unit along with the only two other Latino Claims Examiners in the Claims Department. In light of this and other evidence which Plaintiff believed showed that Ms. Levene harbored a bias against Latinos, Plaintiff expressed concern to Ms. Byron that their race/national origin may have played a factor in Ms. Levene moving them to the Fast Track unit.

40.     On January 5, 2015, Plaintiff met with Ms. Rushbrook and Ms. Byron, Defendant's Human Resources Director, to discuss her concerns again. At this meeting, Plaintiff specifically requested that Ms. Byron and Ms. Rushbrook interview Plaintiff's colleagues in Claims to confirm the concerns that Plaintiff raised, however, they failed to do so.

41.     Ms. Byron and Ms. Rushbrook conducted an investigation, which consisted of simply talking to Ms. Levene, and concluded that Ms. Levene's employment of her husband's family members was not a conflict of interest because these relationships did not meet the definition of "immediate family members" under the TransRe Code of Conduct.

42.     Because Ms. Byron reported to Ms. Levene, Ms. Levene was aware of Plaintiff's complaint. Indeed, after Plaintiff met with Ms. Bryon and Sandra Rushbrook on January 13, 2015 to discuss the results of their investigation, Plaintiff met with Ms. Byron, Ms. Rushbrook, and Ms. Levene to discuss Plaintiff's complaint.

43.     Plaintiff is not aware of any action taken by Defendant to address the concerns that Plaintiff raised regarding Ms. Levene's conflicts of interest.

44.     Following Plaintiff's complaints to Compliance/Human Resources, Ms. Levene retaliated against Plaintiff in the following ways:

a.      For the first time in Plaintiff's nine and a half-year career with Defendant, Plaintiff did not receive either a raise or a bonus.

      b.     Ms. Levene repeatedly set Plaintiff up to fail by assigning her tasks with short deadlines that were difficult to complete and then using this failure as justification for subsequent disciplinary actions.

      c.     Ms. Levene regularly lashed out against Plaintiff with angry outbursts towards Plaintiff, including outbursts in front of Plaintiff's co-workers and peers.

      d.     Ms. Levene unduly scrutinized Plaintiff's work performance and went so far as to have Defendant's IT Department provided her with a log of Plaintiff's activities, meetings, and emails. Plaintiff is not aware of Ms. Levene taking this action with respect to any other employees.

**Alleghany's Code of Conduct**

45.     Alleghany's Code of Business Conduct and Ethics ("Alleghany Code of Conduct"), which applies to all of Alleghany's subsidiaries, including Defendant, also required all of Defendant's employees to ensure that personal activities and interests did not conflict with their responsibilities to Alleghany and to avoid "even the appearance of a conflict of interest."

46.     With respect to conflicts of interest, the Alleghany Code of Conduct provides: "[A] conflict of interest may arise when you (or, as applicable, someone with a close relationship with you): . . . Let your business decisions be influenced, or appear to be influenced, by personal or family interests or friendships. . . [or] Have any other arrangement or circumstance, including family or other personal relationships, which might dissuade you from acting in the best interests of Alleghany."

47.     The Alleghany Code of Conduct further provides that: "When these situations occur, you should promptly notify a Compliance Contact who can then provide guidance regarding how best to remove or appropriately resolve the conflict."

48.     The Alleghany Code of Conduct requires managerial employees to maintain strict compliance with the code: "While all employees are expected to act ethically, each supervisor at Alleghany has the increased responsibility of leading by example. If you are in a management position, you have a special responsibility to conduct yourself in a manner that is consistent with the ethical and other standards set forth in the Code."

49.     The Alleghany Code of Conduct also encouraged employees to report potential violations of the code. Specifically, the code provided: "Any time you suspect or observe a violation of the Code, the law or any company policy, or you feel pressured to violate the Code, the law or any company policy, you are required to voice your concerns or report the suspected or actual violation."

50.     The Alleghany Code of Conduct prohibited retaliation against employees that make reports pursuant to the Alleghany Code of Conduct: "Do not be afraid to speak up and promote an ethical culture at Alleghany. We prohibit retaliation against any employee who, in good faith, voices concerns, reports violations or participates in an investigation."

51.     In March 2015, Plaintiff made an official complaint with Alleghany via Alleghany's Compliance Hotline. Upon information and belief, Ms. Levene was made aware of Plaintiff's complaint to Alleghany's Compliance Hotline.

52.     On April 22, 2015, Plaintiff met with Stela Burghart, Alleghany's Chief Compliance Officer, and reported the above-outlined concerns regarding Ms. Levene's conflicts of interests to Alleghany.

53.     In making this complaint, Plaintiff specifically addressed concerns regarding: (i) Ms. Levene's hiring of family members to work in Defendant's Claims Department, (ii) favoritism exhibited by Ms. Levene to Mr. Sherman which undermined Plaintiff's ability to do

her job, (iii) Ms. Levene's and Mr. Sherman's supervision of work performed by her husband's

law firm for Defendant and their approval of invoices paid by Defendant to Mr. Levene's law

firm, (iv) Ms. Levene's hiring of a former co-worker of Mr. Levene from his law firm for an

unpublished position with Defendant.

54.     Plaintiff told Ms. Burghart that she was concerned about reporting these concerns

because Ms. Levene had previously joked to others, "I'm HR. Who are you going to report me

to?"

55.     In making this report, Plaintiff specifically expressed concern about: (a) the effect

that these conflicts of interest had on Defendant's reputation in the reinsurance industry, (b) the

fact that there did not appear to be any checks on Ms. Levene's authority, and (c) the effect that

this could have on Alleghany's shareholders. Specifically, Plaintiff disclosed that colleagues in

the industry had questioned her about all the business that Defendant gave to Mr. Levene's law

firm and that Plaintiff felt that Ms. Levene had an incentive to bring additional claims by

Defendant because the work would go to Mr. Levene's law firm.

56.     Plaintiff also disclosed that in 2014, Defendant had paid more than $13 million in

fees to Ms. Levene's husband's law firm.

57.     Plaintiff also reported her concern that her race/national origin was a factor in the

decision to transfer her from the 1985 & Prior unit to the Fast Track unit.

58.     Plaintiff also reported that since reporting her concerns to Defendant's

Compliance Department, Ms. Levene had been retaliating against her by, among other things,

denying Plaintiff a bonus/salary increase, questioning Plaintiff's expense reports, physically

isolating Plaintiff from her co-workers, accusing Plaintiff of badmouthing the Fast Track unit to

her subordinates in the Fast Track Unit, and nitpicking her work in an effort to generate pre-textual reasons to discipline Plaintiff.

59.     Plaintiff believes that Ms. Levene was aware of her complaint to Alleghany's Compliance Department because, as part of her investigation, Ms. Burghart had a number of meetings with Ms. Byron and Gary Schwartz, Defendant's General Counsel, in Defendant's offices.

60.     Following Plaintiff's report to Alleghany, Ms. Levene retaliated against Plaintiff, both for her prior report to Defendant's Compliance Department and her more recent report to Alleghany in the following way:

        a.      Ms. Levene repeatedly set Plaintiff up to fail by assigning her tasks with short deadlines that were impossible to complete and then using this as justification for subsequent disciplinary actions.

        b.      Ms. Levene's angry outbursts towards Plaintiff increased in frequency and began to occur on an almost daily basis, including outbursts in front of Plaintiff's co-workers and peers.

        c.      On May 7, 2015, just two weeks after Plaintiff's meeting with Ms. Burghart, Ms. Levene issued Plaintiff a written performance warning that unfairly characterized Plaintiff's work performance and confirmed for Plaintiff that Ms. Levene was setting Plaintiff up to fail in an effort to terminate her employment because of her complaints to Defendant's and Alleghany's Compliance Department.

**Plaintiff's Medical Leave**

61.     As a result of Ms. Levene's constant scrutiny and increasing hostility, on May 8, 2015, Plaintiff's mental health provider recommended that she go out on a medical leave of

absence to recover from the stress, anxiety, and depression that resulted from Ms. Levene's retaliatory treatment of Plaintiff.

62.     Effective May 8, 2015, Plaintiff was out on a medical leave of absence. Plaintiff applied for short-term disability benefits, but the carrier denied Plaintiff benefits because it deemed Plaintiff's disability to be work-related. As a result, Plaintiff's was not paid during her leave after she exhausted her accrued paid time off.

63.     Plaintiff's medical leave was also designated as FMLA leave and Plaintiff provided medical documentation and information regarding her medical condition to the Hartford, Defendant's third-party administrator.

64.     Despite having provided information from Plaintiff's doctor concerning her medical leave to the Hartford, the Hartford continued to send Plaintiff correspondence requesting additional information concerning her medical leave. On various occasions, Plaintiff contacted the Hartford and they told Plaintiff that that they already had the required information in their files.

65.     Plaintiff was also in regular communication with Defendant about the status of her leave. For example, on August 14, 2015, Plaintiff texted Defendant's medical leave contact Tania Thomas to ask about the status of her FMLA leave and when her FMLA leave was scheduled to end. Ms. Thomas texted back and said "I do not know."

66.     On August 19, 2015, three business days' after Plaintiff's last contact with Defendant, TransRe notified Plaintiff that, because she had allegedly not provided certain information to the Hartford, Defendant was treating Plaintiff as having resigned her employment with Defendant effective on that date.

67.     Defendant made no attempt to address these concerns with Plaintiff directly before terminating her employment, despite knowing full well that Plaintiff was out on medical leave; instead, Defendant left Plaintiff in the dark about the status of her FMLA leave and then terminated her employment for failing to return from FMLA leave.

68.     On September 9, 2015, after Plaintiff's attorney addressed the retaliatory nature of Defendant's termination of Plaintiff's employment, Defendant reversed course and reinstated Plaintiff's employment with Defendant; however, on September 28, 2015, Defendant notified Plaintiff that when she returned to work she would no longer occupy her former position as manager of the Fast Track unit, but would instead be demoted to a Claims Examiner position and that Plaintiff would remain on written warning – and thus under the threat of termination.

69.     Defendant justified this demotion by claiming that Defendant had remedied all of the performance problems in the Fast Track unit that existed at the time that Plaintiff went out FMLA on leave and had eliminated her position. However, Defendant has not eliminated the position; instead, Mr. Rosen continues to serve as supervisor of the Fast Track Unit.

70.     On November 9, 2015, Plaintiff returned from her medical leave and was assigned to a Claims Examiner position, reporting to her former supervisor.

71.     Since her return from medical leave, Ms. Levene has subjected Plaintiff to increased scrutiny and negative performance reviews in retaliation for Plaintiff's prior complaints to Defendant's Human Resources and Compliance Departments and Alleghany's Compliance Department.

## FIRST CAUSE OF ACTION
**(Violation of Dodd-Frank Wall Street Reform and Consumer Protection Act)**

72.     Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

73.     At all relevant times, Defendant was an "employer" within the meaning of the anti-retaliation provisions of Dodd-Frank, 15 U.S.C. § 78u-6(h).

74.     As set forth above, Defendant is a wholly-owned subsidiary of Alleghany, a publicly held corporation. As a result, Defendant is subject to the anti-retaliation provisions of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A, and Dodd-Frank.

75.     Plaintiff was a whistleblower within the meaning of 15 U.S.C. § 78u-6(h) because she made disclosures to Defendant that were protected under 18 U.S.C. § 1514A. Specifically, Plaintiff reported potential violations of both TransRe's and Alleghany's Code of Conduct provisions regarding conflicts of interest to these entities' respective compliance personnel that could result in fraud against Alleghany and its shareholders.

76.     As set forth above, Defendant violated Dodd-Frank's anti-retaliation provisions by taking adverse employment actions against Plaintiff, including, but not limited to, (i) unnecessarily scrutinizing Plaintiff's work performance in order to find reasons to criticize her work performance, (ii) issuing Plaintiff a written performance warning that threatened Plaintiff with termination; (iii) terminating Plaintiff's employment while claiming that Plaintiff was on an unapproved leave of absence, (iv) eliminating Plaintiff's position as manager of the Fast Track unit while Plaintiff was out on medical leave, (v) demoting Plaintiff to a Claims Examiner position, and (vi) since her return from medical leave, Ms. Levene has subjected Plaintiff to increased scrutiny and negative performance reviews, all because Plaintiff made disclosures to Defendant that were protected under 18 U.S.C. § 1514A.

77. The above-outlined retaliation also had the effect of creating a hostile work environment for Plaintiff in retaliation for Plaintiff's protected disclosures pursuant to 18 U.S.C. § 1514A.

78. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered and will continue to suffer severe financial hardship, as well as mental and emotional distress and injury, including the lost of compensation, loss of future compensation and earning power, and other additional damages, including interest, attorneys' fees and costs.

### SECOND CAUSE OF ACTION
**(FMLA Retaliation)**

79. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

80. At all relevant times, Plaintiff was an "eligible employee" within the meaning of the FMLA. Similarly, at all relevant times, Defendant was a "covered employer" within the meaning of the FMLA.

81. Plaintiff engaged in protected activity when she requested – and took – an FMLA-designated leave of absence from May 8, 2015 through July 30, 2015.

82. As set forth above, Defendant violated the FMLA by taking adverse employment actions against Plaintiff, including, but not limited to, (i) terminating Plaintiff's employment while claiming that Plaintiff was on an unapproved leave of absence, (ii) eliminating Plaintiff's position as manager of the Fast Track unit while Plaintiff was out on medical leave, and (iii) demoting Plaintiff to a Claims Examiner position, because Plaintiff exercised rights protected by the FMLA, and (iv) since her return from FMLA leave, Ms. Levene has subjected Plaintiff to increased scrutiny and negative performance reviews, all in retaliation for exercising rights protected by the FMLA.

83.     The above-outlined retaliation also had the effect of creating a hostile work environment for Plaintiff in retaliation for Plaintiff's exercise of rights protected by the FMLA.

84.     As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

85.     Defendant's unlawful actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

### THIRD CAUSE OF ACTION
**(Retaliation in Violation of the State Human Rights Law)**

86.     Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

87.     At all relevant times, Plaintiff was an "eligible employee" within the meaning of the State Human Rights Law. Similarly, TransRe was an "employer" within the meaning of the State Human Rights Law.

88.     Plaintiff engaged in the following activities which constitute protected activity under the State Human Rights Law: (i) in December 2014, Plaintiff raised concerns that her transfer from manager of the 1985 & Prior unit to the Fast Track unit was based on her race/national origin, and (ii) in May 2015, Plaintiff requested a medical leave of absence as an accommodation for the stress, anxiety, and depression that she was suffering from as a result of Ms. Levene's retaliatory treatment of her.

89.     As set forth above, Defendant violated the State Human Rights Law by taking adverse employment actions against Plaintiff, including, but not limited to, (i) unnecessarily scrutinizing Plaintiff's work performance in order to find reasons to criticize her work performance, (ii) issuing Plaintiff a written performance warning that threatened Plaintiff with

termination; (iii) terminating Plaintiff's employment while claiming that Plaintiff was on an unapproved leave of absence, (iv) eliminating Plaintiff's position as manager of the Fast Track unit while Plaintiff was out on medical leave, (v) demoting Plaintiff to a Claims Examiner position, and (vi) since her return from medical leave, Ms. Levene has subjected Plaintiff to increased scrutiny and negative performance reviews, all because Plaintiff exercised rights protected by the State Human Rights Law when she complained about potential race/national origin discrimination and/or requested an accommodation for her disability.

90. The above-outlined retaliation also had the effect of creating a hostile work environment for Plaintiff in retaliation for Plaintiff's exercise of rights protected by the State Human Rights Law.

91. As a direct and proximate result of Defendant's retaliatory conduct in violation of the State Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which Plaintiff is entitled to an award of damages.

92. As a direct and proximate result of Defendant's retaliatory conduct in violation of the State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of damages.

## FOURTH CAUSE OF ACTION
**(Disability Discrimination in Violation of the State Human Rights Law)**

93. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

20

94.     At all relevant times, Plaintiff was an "eligible employee" within the meaning of the State Human Rights Law. Similarly, TransRe was an "employer" within the meaning of the State Human Rights Law.

95.     Defendant violated the State Human Rights Law when it (i) failed to accommodate Plaintiff and instead terminated her employment with Defendant in August 2015 while claiming that Plaintiff was on an unapproved leave of absence and (ii) eliminated Plaintiff's position as manager of the Fast Track unit while she was out on medical leave.

96.     As a direct and proximate result of Defendant's conduct in violation of the State Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which Plaintiff is entitled to an award of damages.

97.     As a direct and proximate result of Defendant's conduct in violation of the State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of damages.

### FIFTH CAUSE OF ACTION
### (Retaliation in Violation of the City Human Rights Law)

98.     Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

99.     At all relevant times, Plaintiff was an "eligible employee" within the meaning of the City Human Rights Law. Similarly, TransRe was an "employer" within the meaning of the City Human Rights Law.

100.     Plaintiff engaged in the following activities which constitute protected activity under the City Human Rights Law: (i) in December 2014, Plaintiff raised concerns that her transfer from manager of the 1985 & Prior unit to the Fast Track unit was based on her race/national origin, and (ii) in May 2015, Plaintiff requested a medical leave of absence as an accommodation for the stress, anxiety, and depression that she was suffering from as a result of Ms. Levene's retaliatory treatment of her.

101.     As set forth above, Defendant violated the City Human Rights Law by taking adverse employment actions against Plaintiff, including, but not limited to, (i) unnecessarily scrutinizing Plaintiff's work performance in order to find reasons to criticize her work performance, (ii) issuing Plaintiff a written performance warning that threatened Plaintiff with termination; (iii) terminating Plaintiff's employment while claiming that Plaintiff was on an unapproved leave of absence, (iv) eliminating Plaintiff's position as manager of the Fast Track unit while Plaintiff was out on medical leave, (v) demoting Plaintiff to a Claims Examiner position, and (vi) since her return from medical leave, Ms. Levene has subjected Plaintiff to increased scrutiny and negative performance reviews, all because Plaintiff exercised rights protected by the City Human Rights Law when she complained about potential race/national origin discrimination and/or requested an accommodation for her disability.

102.     The above-outlined retaliation also had the effect of creating a hostile work environment for Plaintiff and that was in retaliation for Plaintiff's exercise of rights protected by the City Human Rights Law.

103.     As a direct and proximate result of Defendant's retaliatory conduct in violation of the City Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or

economic damages, including, but not limited to, loss of past and future income, compensation

and benefits, for which Plaintiff is entitled to an award of damages.

104.    As a direct and proximate result of Defendant's retaliatory conduct in violation of

the City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish

and emotional distress, including, but not limited to, depression, humiliation, embarrassment,

stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for

which she is entitled to an award of damages.

105.    Defendant's unlawful actions constitute bad faith, malicious, willful and wanton

violations of the City Human Rights Law for which Plaintiff is entitled to an award of punitive

damages.

### SIXTH CAUSE OF ACTION
**(Disability Discrimination in Violation of the City Human Rights Law)**

106.    Plaintiff hereby repeats and realleges the allegations in each of the preceding

paragraphs as if fully set forth herein.

107.    At all relevant times, Plaintiff was an "eligible employee" within the meaning of

the City Human Rights Law. Similarly, TransRe was an "employer" within the meaning of the

City Human Rights Law.

108.    Defendant violated the City Human Rights Law when it (i) failed to accommodate

and instead terminated Plaintiff's employment with Defendant in August 2015 while claiming

that Plaintiff was on an unapproved leave of absence and (ii) eliminated Plaintiff's position as

manager of the Fast Track unit while Plaintiff was out on medical leave.

109.    As a direct and proximate result of Defendant's conduct in violation of the City

Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or economic

damages, including, but not limited to, loss of past and future income, compensation and benefits, for which Plaintiff is entitled to an award of damages.

110.    As a direct and proximate result of Defendant's conduct in violation of the City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of damages.

**SEVENTH CAUSE OF ACTION**
**(Breach of Contract)**

111.    Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

112.    Plaintiff and Defendant are parties to enforceable contractual relationship that includes Defendant's obligation to avoid retaliating against Plaintiff for making good faith reports of violations of the TransRe Code of Conduct and the Alleghany Code of Conduct, implied by the fact of the anti-retaliation policies contained therein.

113.    As set forth above, Defendant violated Dodd-Frank's anti-retaliation provisions by taking adverse employment actions against Plaintiff, including, but not limited to, (i) unnecessarily scrutinizing Plaintiff's work performance in order to find reasons to criticize her work performance, (ii) issuing Plaintiff a written performance warning that threatened Plaintiff with termination; (iii) terminating Plaintiff's employment while claiming that Plaintiff was on an unapproved leave of absence, (iv) eliminating Plaintiff's position as manager of the Fast Track unit while Plaintiff was out on medical leave, (v) demoting Plaintiff to a Claims Examiner position, and (vi) since her return from medical leave, Ms. Levene has subjected Plaintiff to

increased scrutiny and negative performance reviews all because Plaintiff made good faith reports of violations of the TransRe Code of Conduct and the Alleghany Code of Conduct.

114.     As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered and continues to suffer substantial monetary and/or economic damages, including but not limited to, loss of past and future income.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States, the State of New York and the City of New York;

B.     An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C.     An order directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory, retaliatory and/or otherwise unlawful treatment of her, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Plaintiff;

D.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all available monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

E.     An award of damages in an amount to be determined at trial, plus prejudgment

interest, to compensate Plaintiff for all available non-monetary and/or compensatory damages, including, but not limited to, compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

F.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

G.      An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H.      An award of punitive damages;

I.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

J.      Such other and further relief as the Court may deem just and proper.


**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: February 22, 2016

FILOSA LAW FIRM, PLLC

By:    _____
          Gregory N. Filosa (GF-3862)

          111 John Street, Suite 2510
          New York, NY 10038
          Tel:    (212) 256-1780
          Fax:    (212) 256-1781
          gfilosa@filosalaw.com

          COUNSEL FOR PLAINTIFF

# EXHIBIT B



# Alleghany

ALLEGHANY CORPORATION

CODE OF BUSINESS CONDUCT AND ETHICS

# Table of Contents

A Message to All Employees..............1

Introduction..............................2

Following the Code ............................................3

Making the Right Decisions.................................4

Voicing Concerns or Reporting Violations .............5

Non-Retaliation ...................................................5

Workplace Environment
and Conduct...........................6

Discrimination and Harassment ...........................7

Health, Safety & Security ....................................7

Substance Abuse .................................................7

Conflicts of Interest .............................8

Outside Interests and Activities ...........................9

Corporate Opportunities and Conflicts ................9

Workplace Relationships and
Employment of Relatives .....................................9

Gifts and Entertainment ....................................10

Political Activities and Contributions .................10

Bribery and Corruption.........................11

Antitrust Laws and Competition......13

Antitrust ...........................................................14

Competition and Fair Dealing..............................14

Integrity of Financial and Other
Company Records...................15

Business Records and Financial Reporting ...........16

Document Retention...........................................16

Communicating with Regulators and Other
Government Officials ..........................................16

Safeguarding of Information
and Resources....................17

Proprietary and Confidential Information ............18

Insider Trading...................................................18

Company Resources............................................19

Data Privacy......................................................19

Third Party Intellectual Property.........................19

International Business Practices......20

Money Laundering Prevention ............................21

Economic Sanctions, Anti-Boycott Laws
and Export Control Laws .....................................21

Administration of the Code............22

Investigating Issues ...........................................23

Disciplinary Action ............................................23

Signature and Acknowledgement .......................23

Waivers.............................................................23

Employment at Alleghany ..................................23

Glossary .............................24

Index ..................................27

Throughout the Code, certain words and phrases appear in blue.
These terms are defined in the Glossary at the end of this document.

A MESSAGE TO
ALL EMPLOYEES

INTRODUCTION

WORKPLACE
ENVIRONMENT
AND CONDUCT

CONFLICTS OF
INTEREST

BRIBERY AND
CORRUPTION

ANTITRUST LAWS
AND COMPETITION

INTEGRITY OF
FINANCIAL AND
OTHER COMPANY
RECORDS

SAFEGUARDING
OF INFORMATION
AND RESOURCES

INTERNATIONAL
BUSINESS
PRACTICES

ADMINISTRATION
OF THE CODE

GLOSSARY

INDEX

## A Message to All Employees

Alleghany has a long-standing commitment to high ethical standards and compliance with all applicable laws and regulations that govern our businesses. Preserving these standards has never been more important than in today's competitive and rapidly changing business environment. As an employee of Alleghany, you are expected to behave ethically and comply with the policies and laws that apply to your job.

The standards described in the Alleghany Code of Business Conduct and Ethics reflect our continued commitment to ethical business practices and compliance with the law. The Code applies to everyone from senior executives to entry-level employees. No one who works for Alleghany is exempt from the Code, and no one in any level of authority has the right to ask you to violate the Code.

You can look to the Code to guide your decisions in a variety of circumstances. However, the Code is not intended to cover every issue or situation you may face as an Alleghany employee. You should use the Code, in conjunction with your company policies, handbooks and manuals, to guide and inform your conduct.

If you believe in good faith that an ethical or legal violation has occurred, you are required to report it to your supervisor or any of the resources listed in the Code, or by using the AlertLine. Our policies forbid any form of retaliation against you for fulfilling this obligation.

Alleghany's success depends on your continued commitment to conducting yourself in an ethical and legally compliant manner. Thank you for your efforts in meeting our business objectives with uncompromising integrity.

Sincerely,

Weston M. Hicks

*President and Chief Executive Officer*

HOME • PRINT

A MESSAGE TO ALL EMPLOYEES

INTRODUCTION

WORKPLACE ENVIRONMENT AND CONDUCT

CONFLICTS OF INTEREST

BRIBERY AND CORRUPTION

ANTITRUST LAWS AND COMPETITION

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

SAFEGUARDING OF INFORMATION AND RESOURCES

INTERNATIONAL BUSINESS PRACTICES

ADMINISTRATION OF THE CODE

GLOSSARY

INDEX



# Introduction

Following the Code ...............................3

Making the Right Decisions.................4

Voicing Concerns or Reporting
Violations ...........................................5

Non-Retaliation ...................................5

INDEX

GLOSSARY

ADMINISTRATION OF THE CODE

INTERNATIONAL BUSINESS PRACTICES

SAFEGUARDING OF INFORMATION AND RESOURCES

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

ANTITRUST LAWS AND COMPETITION

BRIBERY AND CORRUPTION

CONFLICTS OF INTEREST

WORKPLACE ENVIRONMENT AND CONDUCT

INTRODUCTION

A MESSAGE TO ALL EMPLOYEES

# Introduction

**Following the Code**

**Making the Right Decisions**

**Voicing Concerns or Reporting Violations**

**Non-Retaliation**

## Following the Code

The Alleghany Corporation Code of Business Conduct and Ethics sets forth standards of conduct for all of Alleghany Corporation and its subsidiaries worldwide. Unless the context otherwise requires, for purposes of the Code, the terms "Alleghany" and the "Company" refer collectively to all of these entities.

The Code applies to all Alleghany employees around the world. Alleghany is committed to complying with the laws and regulations that apply to our businesses and acting in an ethical manner. To this end, each one of us, no matter where we live or work, must obey at all times the letter and the spirit of the law and abide by the ethical and other standards set forth in the Code. The Code provides information about our standards of integrity and explains our legal and ethical responsibilities. Additional requirements are set forth in detail in various individual compliance programs developed by us and our subsidiaries. No reason, including the desire to meet business goals, can ever be an excuse for violating our ethical standards or applicable company policies, laws and regulations.

Although the Code is designed to meet or exceed existing legal and compliance requirements, if there is any real or apparent conflict between the Code and supplemental policies and procedures, laws or regulations applicable to your job, you should seek guidance from any of the resources listed in the Code. Further, if any provision of the Code is not permitted by applicable law, then it is superseded by that law.

While all employees are expected to act ethically, each supervisor at Alleghany has the increased responsibility of leading by example. If you are in a management position, you have a special responsibility to conduct yourself in a manner that is consistent with the ethical and other standards set forth in the Code. We rely on our supervisors and leaders to reinforce the principles of the Code throughout all levels of our organization. The tone you set in your everyday actions is the single most important factor in fostering a culture where your employees act in compliance with the ethical and other standards set forth in the Code. As a supervisor, you should:

- Make sure your team members complete required training programs, sign off on mandatory policies and follow all other applicable ethics and compliance requirements.

- Create an open work environment where team members feel comfortable voicing concerns or reporting potential violations.

- Prevent retaliation against employees who, in good faith, voice concerns or report violations.

- Report situations that might impact the ability of employees to act ethically on behalf of Alleghany.

- Be consistent when enforcing company policies and holding people accountable for their behavior at work.

- Consider conduct in relation to the Code and other company policies when evaluating employees.

- Never encourage or direct employees to achieve business results at the expense of ethical conduct or compliance with the Code or the law.

**Q:** The senior management of my company sets various goals that we are supposed to achieve. Sometimes I feel pressured to violate the Code to achieve these goals. Is this acceptable?

**A:** No. Although successful businesses often set goals and strive to achieve them, you should never violate the Code or other company policies to achieve your goals.

HOME • PRINT

A MESSAGE TO ALL EMPLOYEES

INTRODUCTION

WORKPLACE ENVIRONMENT AND CONDUCT

CONFLICTS OF INTEREST

BRIBERY AND CORRUPTION

ANTITRUST LAWS AND COMPETITION

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

SAFEGUARDING OF INFORMATION AND RESOURCES

INTERNATIONAL BUSINESS PRACTICES

ADMINISTRATION OF THE CODE

GLOSSARY

INDEX

ALLEGHANY CODE OF BUSINESS CONDUCT AND ETHICS

# Introduction

**Following the Code**

**Making the Right Decisions**

**Voicing Concerns or Reporting Violations**

**Non-Retaliation**

We also expect and encourage all of our business partners and their employees to act in a way that is consistent with the Code. Third parties with whom we do business can have a direct impact on our reputation through their behavior. For this reason, we want to work with business partners that share our commitment to ethics and compliance. We will take appropriate measures where we believe our business partners have not met our expectations or their contractual obligations.

## Making the Right Decisions

While the Code provides questions and answers for situations that you might encounter on the job and lists resources for help or further information, the Code does not address every specific situation or set forth a rule that will answer every question. Rather, it is intended to provide guidance on your responsibilities and to assist in making the right decisions.

When faced with situations in which the right decision is not clear or takes time to figure out, use the Ethical Decision-Making Guide below to guide you to the best course of action or consult with a Compliance Contact before proceeding.



For purposes of the Code, the term "Compliance Contact" refers to your immediate supervisor, other members of your company's leadership team, and the members of your company's compliance, human resources or legal departments.

A MESSAGE TO ALL EMPLOYEES

INTRODUCTION

WORKPLACE ENVIRONMENT AND CONDUCT

CONFLICTS OF INTEREST

BRIBERY AND CORRUPTION

ANTITRUST LAWS AND COMPETITION

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

SAFEGUARDING OF INFORMATION AND RESOURCES

INTERNATIONAL BUSINESS PRACTICES

ADMINISTRATION OF THE CODE

GLOSSARY

INDEX

# Introduction

## Following the Code

## Making the Right Decisions

## Voicing Concerns or Reporting Violations

## Non-Retaliation

### Voicing Concerns or Reporting Violations

Any time you suspect or observe a violation of the Code, the law or any company policy, or you feel pressured to violate the Code, the law or any company policy, you are required to voice your concerns or report the suspected or actual violation. To do so, contact any of the following Compliance Contacts:

- **Supervisor** – Because your supervisor will generally be in the best position to address your concerns, we encourage you to reach out to him or her first.

- **Another Leader** – If you are uncomfortable speaking with your immediate supervisor, or you do not believe the issue has been addressed, you may voice your concerns or report violations to another member of your company's leadership team.

- **Compliance or Human Resources Department** – You may also contact your company's compliance or human resources department.

- **Legal Department** – The legal department within your company can also assist you, especially with questions concerning applicable laws and regulations. If your company does not have a legal department, you can contact the legal department of Alleghany Corporation.

- **Alleghany Corporation** – At times, you may prefer to discuss your concerns with someone outside your company. In such instances, you may contact Alleghany Corporation's Chief Compliance Officer or General Counsel.

> 7 Times Square Tower, 17th Floor
> New York, NY 10036
> Tel: 212-752-1356
> Fax: 212-759-3295

- **AlertLine** – If you prefer an anonymous or confidential outlet, you can contact the Alleghany group-wide compliance hotline and web reporting tool known as AlertLine. Anonymous reporters are provided with a case number and password and instructed to check back within a certain time frame to receive an update or to provide additional information that may be necessary to properly investigate their concern. Please be advised that in a small number of cases, not providing a name or other identifying information may diminish our ability to investigate the matter and we may not be able to fully address your concern. This underscores how important it is for individuals who choose to report their concerns anonymously to check the report regularly, using the case number and password that will be provided by AlertLine, for information requests from the investigation team.

Q&A

**Q:** Our supervisor typically does nothing when concerns about potential misconduct are brought to her attention. She has made things difficult for co-workers who have raised issues. Now I have a problem: a co-worker is doing something wrong. What should I do?

**A:** Under the Code, you are required to report any good faith concern. Remember that you are protected from retaliation — even if your concerns turn out to be incorrect. Also keep in mind that you may report your concerns to any Compliance Contact or anonymously through the AlertLine, so you can pick the resource most comfortable for you.

### Non-Retaliation

Do not be afraid to speak up and promote an ethical culture at Alleghany. We prohibit retaliation against any employee who, in good faith, voices concerns, reports violations or participates in an investigation.

INDEX

GLOSSARY

ADMINISTRATION OF THE CODE

INTERNATIONAL BUSINESS PRACTICES

SAFEGUARDING OF INFORMATION AND RESOURCES

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

ANTITRUST LAWS AND COMPETITION

BRIBERY AND CORRUPTION

CONFLICTS OF INTEREST

WORKPLACE ENVIRONMENT AND CONDUCT

INTRODUCTION

A MESSAGE TO ALL EMPLOYEES



# Workplace Environment and Conduct

Discrimination and Harassment.............7

Health, Safety & Security ....................7

Substance Abuse ...............................7

INDEX

GLOSSARY

ADMINISTRATION OF THE CODE

INTERNATIONAL BUSINESS PRACTICES

SAFEGUARDING OF INFORMATION AND RESOURCES

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

ANTITRUST LAWS AND COMPETITION

BRIBERY AND CORRUPTION

CONFLICTS OF INTEREST

WORKPLACE ENVIRONMENT AND CONDUCT

INTRODUCTION

A MESSAGE TO ALL EMPLOYEES

# Workplace Environment and Conduct

**Discrimination and Harassment**

**Health, Safety & Security**

**Substance Abuse**

## Discrimination and Harassment

Alleghany is committed to a workplace that is free from discrimination or harassment of any kind. We recruit, select, train, promote and compensate based on merit, experience and other work-related criteria. We comply with all laws governing fair employment and labor practices. We prohibit discrimination by or against any person on the basis of race, color, national origin, ancestry, citizenship status, creed, religion, religious affiliation, age, sex, pregnancy, maternity, caring responsibility, marital status, civil partnership, sexual orientation, gender identity or expression, genetic information, disability, veteran status or any other status protected under applicable law.

**Q:** During breaks from work my supervisor and several of my co-workers tell jokes with a sexual overtone that I find very offensive. I have not complained because I know they will tell me to mind my own business or that I can't take a joke. Would they be right?

**A:** No, they would be wrong. Offensive jokes of a sexual nature, even in private conversations that may be overheard by others, can constitute harassment. First, you should try to talk to your supervisor and co-workers. If this does not work, or if you think doing so may subject you to retaliation or other problems, talk to any other Compliance Contact or contact the AlertLine.

## Health, Safety & Security

Alleghany is committed to conducting business in a manner that protects the health, safety and security of its employees and business partners while they are on Alleghany premises. Each of us is accountable for observing the safety and health rules and practices that apply to our job and for taking precautions necessary to protect us and our co-workers, including immediately reporting accidents, injuries and unsafe practices or conditions.

Alleghany is committed to a safe work environment that is free of threats, intimidation and physical harm. To this end, we prohibit all forms of violent behavior in the workplace including, but not limited to, physical assaults, fighting, threatening comments, intimidation, threats through electronic communications including social media, and the intentional or reckless destruction of property belonging to Alleghany, its employees or business partners. Violence or threats of violence should be immediately reported to your company's security, human resources or legal department, or law enforcement, as appropriate.

Alleghany also prohibits the possession and/or use of any type of weapon by any employee while at work, on company property or while on company business.

**Q:** Despite what Alleghany says about the importance of safety, my supervisor demands that I meet targets that can only be met by breaking safety procedures. I raised the issue with my co-workers, but they told me to keep quiet or I might be fired. What should I do?

**A:** Safety procedures must never be compromised. If you are not comfortable discussing the situation with your supervisor or another member of the leadership at your company, you should talk to any of the other Compliance Contacts or contact the AlertLine.

## Substance Abuse

Alleghany prohibits the use, sale, possession, or being under the influence, of illegal drugs or the inappropriate or excessive use of alcohol or controlled substances while conducting business for Alleghany, whether or not consumed during regular working hours or whether or not consumed on Alleghany's premises. We reserve the right to test for the presence of illegal or controlled substances.

A MESSAGE TO ALL EMPLOYEES    INTRODUCTION    **WORKPLACE ENVIRONMENT AND CONDUCT**    CONFLICTS OF INTEREST    BRIBERY AND CORRUPTION    ANTITRUST LAWS AND COMPETITION    INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS    SAFEGUARDING OF INFORMATION AND RESOURCES    INTERNATIONAL BUSINESS PRACTICES    ADMINISTRATION OF THE CODE    GLOSSARY    INDEX



# Conflicts of Interest

Outside Interests and Activities ............9

Corporate Opportunities and Conflicts ....9

Workplace Relationships and
Employment of Relatives ......................9

Gifts and Entertainment ......................10

Political Activities and Contributions....10

INDEX

GLOSSARY

ADMINISTRATION
OF THE CODE

INTERNATIONAL
BUSINESS
PRACTICES

SAFEGUARDING
OF INFORMATION
AND RESOURCES

INTEGRITY OF
FINANCIAL AND
OTHER COMPANY
RECORDS

ANTITRUST LAWS
AND COMPETITION

BRIBERY AND
CORRUPTION

CONFLICTS OF
INTEREST

WORKPLACE
ENVIRONMENT
AND CONDUCT

INTRODUCTION

A MESSAGE TO
ALL EMPLOYEES

# Conflicts of Interest

**Outside Interests and Activities**

**Corporate Opportunities and Conflicts**

**Workplace Relationships and Employment of Relatives**

**Gifts and Entertainment**

**Political Activities and Contributions**

## Outside Interests and Activities

As employees, we must ensure that our personal activities and interests do not conflict with our responsibilities to Alleghany. We must avoid even the appearance of a conflict of interest.

Conflicts of interest can commonly arise in many areas despite our best efforts to avoid them. For instance, a conflict of interest may arise when you (or, as applicable, someone with a close relationship with you):

- Engage in activities that compete with, or appear to compete with, Alleghany's interests.

- Let your business decisions be influenced, or appear to be influenced, by personal or family interests or friendships.

- Use Company resources for your personal benefit or the benefit of others.

- Have outside employment and affiliations that negatively affect your job performance or interfere with your Alleghany responsibilities.

- Have more than a de minimis ownership interest (for example, owning more than 1% of publicly-traded stock) in a competitor or business partner.

- Have any other arrangement or circumstance, including family or other personal relationships, which might dissuade you from acting in the best interests of Alleghany.

When these situations occur, you should promptly notify a Compliance Contact who can then provide guidance regarding how best to remove or appropriately resolve the conflict.

## Corporate Opportunities and Conflicts

In the course of your employment with Alleghany, you may be presented with, discover or develop ideas or opportunities for a new business or investment. These opportunities and ideas are the sole and exclusive property of Alleghany. You are prohibited from using such an idea or opportunity for your personal gain without the prior, written consent of Alleghany. You may not use your position within Alleghany, or any Company resources or information, for improper personal gain or to compete with Alleghany, either during or after your employment with Alleghany.

During your employment with Alleghany, you may not directly or indirectly solicit any employee or other business partner to leave Alleghany or end their relationship with Alleghany.

## Workplace Relationships and Employment of Relatives

While Alleghany recognizes and respects the rights of employees to freely associate with those they encounter in the work environment, we expect you to ensure that those relationships do not negatively impact

job performance, the ability to supervise others or the work environment.

Accordingly, an employee who is in a close relationship with another employee may not occupy a position in which he or she can influence the terms and conditions of the employment of the other employee or directly or indirectly supervises the other employee. If an employee in the relationship occupies a position, it is the responsibility and obligation of both employees to immediately disclose the existence of the relationship to a Compliance Contact.

In addition, to avoid perceived or actual conflicts of interest, such as favoritism or personal conflicts from outside the work environment carrying over into the daily working relationship, we reserve the right to prohibit the hire of a relative of any employee if a relative occupies a position in which he or she can influence the terms and

---

**Q: I supervise the woman that my son is dating. What should I do?**

**A:** You should disclose this situation to your company's human resources department. Human resources will work with your management to see if a change in reporting relationships is needed.

A MESSAGE TO ALL EMPLOYEES

INTRODUCTION

WORKPLACE ENVIRONMENT AND CONDUCT

CONFLICTS OF INTEREST

BRIBERY AND CORRUPTION

ANTITRUST LAWS AND COMPETITION

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

SAFEGUARDING OF INFORMATION AND RESOURCES

INTERNATIONAL BUSINESS PRACTICES

ADMINISTRATION OF THE CODE

GLOSSARY

INDEX

ALLEGHANY CODE OF BUSINESS CONDUCT AND ETHICS

# Conflicts of Interest

**Outside Interests and Activities**

**Corporate Opportunities and Conflicts**

**Workplace Relationships and Employment of Relatives**

**Gifts and Entertainment**

**Political Activities and Contributions**

conditions of the employment of another relative or directly or indirectly supervises another relative. Any such employment must be presented to a Compliance Contact for review and approval in advance of an offer of employment being made.

## Gifts and Entertainment

All Alleghany employees should understand the legal and ethical issues associated with both giving and receiving gifts and entertainment and how such activities can affect our reputation and relationships with third parties. Although modest business gifts and appropriate entertainment are courtesies designed to build goodwill and sound working relationships among business partners, we do not want to obtain business through improper means. To this end, you are prohibited from accepting any gifts or entertainment, or any other favor, if doing so might compromise, or appear to compromise, your ability to make objective business decisions in the best interest of Alleghany. In addition, any gifts or entertainment are permitted only if they:

- Are relatively infrequent;

- Reasonable and customary for the circumstances;

- Comply with applicable laws and regulations and are consistent with customary business practices or courtesies;

- Will not place you under any obligation to the person who gave the gift or entertainment.

- Do not include cash or cash equivalents;

- Do not violate our commitment to diversity and anti-harassment; and

- Would not embarrass you, Alleghany or the person giving the gift, if publicly disclosed.

Please remember that some of our subsidiaries have more restrictive gift policies and you should comply with the most restrictive policy applicable to you. You must also follow any approval procedures required by your company's policies, before accepting any gift or entertainment.

## Political Activities and Contributions

Alleghany encourages employee participation in the civic and political arena. However, your activities must be done on your own time and at your own expense, and you must make clear that your views and actions are your own and not those of Alleghany. Under no circumstances will Alleghany reimburse any employee for making a personal political contribution.

Due to the complexity and diversity of laws and regulations governing corporate political activities, you may not make any such contribution on Alleghany's behalf unless the contribution is approved in advance by the General Counsel of Alleghany Corporation.

Q&A

**Q: I'm an administrative assistant. My supervisor is very active in local politics and he often asks me to help him copy flyers and plan political events that he hosts on his own time. Since his political work is often related to our industry and to issues that have an impact on Alleghany, he's asked me to submit some of his expenses for reimbursement. Is this okay?**

**A:** No, it is not. Your supervisor's expenses are his own personal contributions. Alleghany reimbursement of personal political contributions is prohibited by law. Your supervisor may also be violating the Code if he is asking you to use Company resources, including your work time, to make copies and otherwise assist in planning his personal political activities.

A MESSAGE TO ALL EMPLOYEES

INTRODUCTION

WORKPLACE ENVIRONMENT AND CONDUCT

CONFLICTS OF INTEREST

BRIBERY AND CORRUPTION

ANTITRUST LAWS AND COMPETITION

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

SAFEGUARDING OF INFORMATION AND RESOURCES

INTERNATIONAL BUSINESS PRACTICES

ADMINISTRATION OF THE CODE

GLOSSARY

INDEX



# Bribery and Corruption

INDEX

GLOSSARY

ADMINISTRATION OF THE CODE

INTERNATIONAL BUSINESS PRACTICES

SAFEGUARDING OF INFORMATION AND RESOURCES

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

ANTITRUST LAWS AND COMPETITION

BRIBERY AND CORRUPTION

CONFLICTS OF INTEREST

WORKPLACE ENVIRONMENT AND CONDUCT

INTRODUCTION

A MESSAGE TO ALL EMPLOYEES

# Bribery and Corruption

At Alleghany, we do not tolerate corruption in connection with any of our business dealings. You may not offer, solicit or accept bribes or kick-backs to or from any individual.

Most countries have anti-bribery laws that prohibit bribing a governmental official, such as the U.S. Foreign Corrupt Practices Act, which we refer to in the Code as the FCPA. All Alleghany employees regardless of personal location or place of business must comply with the FCPA. In addition, under some countries' laws, such as the United Kingdom's Bribery Act, bribing anyone, even if he or she is not a government employee, is also a crime.

## Q&A

Q: An executive of a state-owned company has suggested that if we make a donation to a local charity he believes our sales efforts in his country would be more favorably received. I'm uncomfortable with this. What should I do?

A: You are right to be uncomfortable. The payment may be a violation of anti-bribery laws. Discuss the situation with a Compliance Contact.

Broadly speaking, the FCPA and other anti-bribery laws prohibit Alleghany (or any of its worldwide businesses, affiliates, employees or representatives) from bribing a government official or any other person in order to improperly influence the performance of the bribe recipient's duties or gain any other improper advantage. Bribes can include anything of value, not just cash payments, for example, tickets to sporting events, expensive meals,

bottles of wine, cigars, use of a vacation home, an interest free loan or employment.

Although we must be aware of these strict prohibitions when considering hospitality expenses (including meals), entertainment, gifts or sponsorships in the course of our business dealings, not all payments or expenses are prohibited. For example, payments may be made to a government entity in the normal course of business, such as to pay taxes, or when the government entity is a supplier. These permissible payments are generally referred to as bona fide payments. In addition, a gift of a certain value, even to a government official, may be allowable under certain narrow exceptions. However, some bona fide payments and gifts, even if nominal, are prohibited by many anti-bribery laws if they are considered facilitation payments, that is payments intended to facilitate or expedite a specific result. Because any payment is risky, particularly a discretionary payment to a government official, all payments and gifts to, and entertainment of, government officials must be pre-approved by a Compliance Contact.

There may be some emergency situations in which pre-approval or guidance may not be possible. If you are forced to make a payment because you are threatened with imminent personal injury, detention or severe property damage unless you make that payment,

report the instance as soon as practicable to a Compliance Contact. Your report should include an accurate and complete description of the circumstances, the amount and nature of the payment, date given, location and names of any individuals involved.

When working with third parties who deal with governments on our behalf, it is critical that you ensure that our consultants, agents or representatives never violate anti-bribery laws. Alleghany and/or its employees may be held liable for bribes paid by a third party on our behalf. You must not engage a third party consultant, agent or representative if there is reason to believe that the consultant, agent or representative may attempt to bribe a government official.

Anti-corruption laws also prohibit creating or keeping inaccurate or false books and records and they require companies to develop and maintain adequate controls regarding corporate assets and accounting. This means that all expenses must be recorded accurately, completely and in a timely manner. Records must include enough detail and documentation to identify the date, venue, nature and purpose of expense and names of all individuals involved.

A MESSAGE TO ALL EMPLOYEES

INTRODUCTION

WORKPLACE ENVIRONMENT AND CONDUCT

CONFLICTS OF INTEREST

BRIBERY AND CORRUPTION

ANTITRUST LAWS AND COMPETITION

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

SAFEGUARDING OF INFORMATION AND RESOURCES

INTERNATIONAL BUSINESS PRACTICES

ADMINISTRATION OF THE CODE

GLOSSARY

INDEX



# Antitrust Laws and Competition

**Antitrust** ................................ 14

**Competition and Fair Dealing** ............... 14



HOME • PRINT

# Antitrust Laws and Competition

**Antitrust**

**Competition and Fair Dealing**

## Antitrust

Antitrust laws, also known as competition laws outside of the U.S., are designed to ensure a fair and competitive free market system where no single company has a monopoly on providing a service or a product. While Alleghany competes vigorously around the world, we seek to maintain and grow our businesses through superior products and services—not through improper or anticompetitive practices. Some of the most serious antitrust offenses occur between competitors, such as agreements to fix prices or to divide customers, territories or markets. Therefore, it is very important for you to not engage in any form of agreement or understanding with competitors to fix prices, rig bids, allocate customers or restrict supply of products or services. Antitrust laws are complex and may vary among different countries and states. Employees who are unsure of appropriate practices should consult with a Compliance Contact for additional information and guidance.

**Q:** I'm confused about antitrust issues. What do I really need to know or do?

**A:** Here's a simple standard in this complicated area: if a conversation or situation appears to limit competition in a market between competitors, suppliers or others, discuss it with a Compliance Contact.

## Competition and Fair Dealing

Alleghany is committed not only to free competition, but to competition that is fair and ethical. This applies particularly to competitive intelligence gathering and to statements about our products and services and those of our competitors.

Alleghany prohibits using illegal or unethical means to obtain confidential information from our business partners or competitors. We also prohibit improperly taking advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or any other unfair practice.

In addition, Alleghany expects all employees to honor any disclosure or use restrictions on information obtained from former employers or other third parties. If you are unsure whether prior employer information would be considered confidential or subject to use restrictions, you should not use or share this information until you have consulted with a Compliance Contact.

**Q:** I am attending a customer meeting with another Alleghany employee and the other employee makes what I believe to be an intentionally false statement about our capabilities. What should I do?

**A:** Correct the error during the meeting if possible. If that is not possible, raise the issue with the employee or your supervisor after the meeting, and ensure that any customer misperception is corrected. If you are correct that the other employee intentionally lied to a customer, the employee violated the Code.

**Q:** To help me do a better job at Alleghany, I kept several documents from my previous employer. These documents describe marketing initiatives my prior employer used. Can I use these documents at Alleghany?

**A:** You should not bring to Alleghany any confidential documents or information belonging to any prior employer.

A MESSAGE TO ALL EMPLOYEES
INTRODUCTION
WORKPLACE ENVIRONMENT AND CONDUCT
CONFLICTS OF INTEREST
BRIBERY AND CORRUPTION
ANTITRUST LAWS AND COMPETITION
INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS
SAFEGUARDING OF INFORMATION AND RESOURCES
INTERNATIONAL BUSINESS PRACTICES
ADMINISTRATION OF THE CODE
GLOSSARY
INDEX



# Integrity of Financial and Other Company Records

**Business Records and Financial
Reporting** .................................. 16

**Document Retention** ...................... 16

**Communicating with Regulators and
Other Government Officials** .............. 16

15

INDEX

GLOSSARY

ADMINISTRATION OF THE CODE

INTERNATIONAL BUSINESS PRACTICES

SAFEGUARDING OF INFORMATION AND RESOURCES

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

ANTITRUST LAWS AND COMPETITION

BRIBERY AND CORRUPTION

CONFLICTS OF INTEREST

WORKPLACE ENVIRONMENT AND CONDUCT

INTRODUCTION

A MESSAGE TO ALL EMPLOYEES

# Integrity of Financial and Other Company Records

**Business Records and Financial Reporting**

**Document Retention**

**Communicating with Regulators and Other Government Officials**

**Q&A**

**Q:** My supervisor asked me to prepare a purchase order for services that cost $30,000 (USD). Her spending authority is only $25,000 (USD). Can I divide the order into two purchase orders to avoid getting higher level approval? She says that this is savvy business practice. What should I do?

**A:** No, you cannot do so. Not getting the proper approvals violates Alleghany policy, which is to ensure that adequate internal accounting controls are maintained and operating effectively. If you are uncomfortable saying no to your supervisor, alert a Compliance Contact or contact the AlertLine.

## Business Records and Financial Reporting

Alleghany is committed to providing investors with full, fair, accurate, timely and understandable disclosure in the periodic reports that we are required to file. To this end, the records, data and information owned, used and managed by Alleghany must be accurate and complete.

All employees are personally responsible for the integrity of all information, reports and records under their control. Further, it is essential that the integrity, accuracy, and reliability of Alleghany's books, records and financial statements be maintained to comply with all legal, accounting, tax and other regulatory requirements. No transaction should be entered into with the intention of it being documented or recorded in a deceptive manner. No false or misleading documentation or book entry should be made for any transaction. Similarly, all funds, assets, and transactions must be disclosed and recorded in the appropriate books and accounted for properly and punctually. Employees may not manipulate financial accounts, records or reports or take any action or cause any person to take any action to influence, coerce, manipulate or mislead auditors for the purpose of rendering financial statements misleading. All transactions must be approved and executed in accordance with internal control procedures established by your company and must be recorded in such a manner as to permit the preparation of accurate financial statements for Alleghany.

## Document Retention

Maintaining the integrity of our records requires proper records management, including proper document retention and disposal. Our document retention requirements are frequently based on specific statutory and regulatory requirements that are unique to a particular business operation. Such retention requirements apply to all company documents, including e-mail and other electronic records. Employees are responsible for understanding and complying with their company's records management rules.

Alleghany may suspend destruction of documents, records or data due to possible litigation, audits, investigations or regulatory inquiries via a document preservation notice issued to those Alleghany employees believed to have relevant materials in their possession, custody or control. It is every Alleghany employee's duty to immediately and carefully review any document preservation notice received and follow its instructions carefully. Information subject to a document retention notice issued by Alleghany should be retained regardless of the time frame set forth in the applicable records retention policy.

If you believe that any documents, records or data in your possession or control are, or may be, the subject of litigation, audit or investigation, you must notify and consult with a Compliance Contact.

## Communicating with Regulators and Other Government Officials

Inquiries from regulators or government officials that are not in the ordinary course of business must be reported immediately to a Compliance Contact before a response is made. Any responses to regulators must contain complete, factual and accurate information. During an inspection or examination, documents must never be concealed, destroyed or altered, nor should any lies or misleading statements be made to regulators.

A MESSAGE TO ALL EMPLOYEES

INTRODUCTION

WORKPLACE ENVIRONMENT AND CONDUCT

CONFLICTS OF INTEREST

BRIBERY AND CORRUPTION

ANTITRUST LAWS AND COMPETITION

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

SAFEGUARDING OF INFORMATION AND RESOURCES

INTERNATIONAL BUSINESS PRACTICES

ADMINISTRATION OF THE CODE

GLOSSARY

INDEX



# Safeguarding of Information and Resources

Proprietary and Confidential
Information ..................................18

Insider Trading .............................18

Company Resources .....................19

Data Privacy .................................19

Third Party Intellectual Property .........19

INDEX

GLOSSARY

ADMINISTRATION OF THE CODE

INTERNATIONAL BUSINESS PRACTICES

SAFEGUARDING OF INFORMATION AND RESOURCES

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

ANTITRUST LAWS AND COMPETITION

BRIBERY AND CORRUPTION

CONFLICTS OF INTEREST

WORKPLACE ENVIRONMENT AND CONDUCT

INTRODUCTION

A MESSAGE TO ALL EMPLOYEES

# Safeguarding of Information and Resources

**Proprietary and Confidential Information**

**Insider Trading**

**Company Resources**

**Data Privacy**

**Third Party Intellectual Property**

## Proprietary and Confidential Information

One of our most important assets is the information that we generate in the course of business, whether technical, business, financial or otherwise. All information that you receive or obtain while you are employed with Alleghany, including, without limitation, information regarding Alleghany's business, employees or business partners, is the property of Alleghany. This information, which we refer to collectively in the Code as Alleghany information, includes non-public information that might be of use to competitors, or harmful to our business partners or us if disclosed. Protecting Alleghany information is very

important to our continued growth and ability to compete. Such information should be disclosed only if properly authorized.

You may not use Alleghany information against Alleghany's interests and you may not retain, use or disclose Alleghany information after you are no longer employed with Alleghany. You may not retain any Alleghany information after your employment ends.

During and after your employment with Alleghany, you may not use Alleghany information to directly or indirectly solicit any employee or business partner to leave Alleghany or end their relationship with Alleghany.

## Insider Trading

In the course of performing your job, you may learn of certain confidential information that qualifies as material non-public information about Alleghany, one of its business partners or another third party. Trading in securities based on material non-public information, or providing material non-public information to others so that they may trade, is both illegal and prohibited by Alleghany policy.



**Q:** I was attending a meeting with several co-workers in a hotel conference room. At lunchtime, everyone left their laptops in the room. I felt uneasy, but I did the same. Should I have done something else?

**A:** Yes, the situation should have been handled differently. The laptops and the information on them are Alleghany property and frequently include confidential or sensitive data. You have a responsibility to ensure that the equipment and information is protected from loss, theft or inadvertent disclosure. You and your co-workers should have either secured the equipment/room or chosen someone to stay with the equipment.

**Q:** You overhear from a co-worker that Alleghany is planning to buy another company at a premium price. You think recommending to your best friend that he buy some shares in this other company would be a wise investment. Should you share the "tip"?

**A:** No. This would be an illegal trade. You cannot use material non-public information to buy shares or recommend others do so, even if Alleghany and the other company have no current business relationship. Once you know of something that attracts one to invest in a business, you are obligated not to share the non-public "tip" or act on it personally.

A MESSAGE TO ALL EMPLOYEES

INTRODUCTION

WORKPLACE ENVIRONMENT AND CONDUCT

CONFLICTS OF INTEREST

BRIBERY AND CORRUPTION

ANTITRUST LAWS AND COMPETITION

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

SAFEGUARDING OF INFORMATION AND RESOURCES

INTERNATIONAL BUSINESS PRACTICES

ADMINISTRATION OF THE CODE

GLOSSARY

INDEX

HOME • PRINT

# Safeguarding of Information and Resources

**Proprietary and Confidential Information**

**Insider Trading**

**Company Resources**

**Data Privacy**

**Third Party Intellectual Property**

## Company Resources

Company resources are intended for Alleghany business and to enable you to perform tasks related to your job. Each of us has the responsibility for safeguarding and making proper and efficient use of Company resources.

You may not use Company resources for any inappropriate or unauthorized purpose or in a manner that would violate applicable laws, regulations or company policies. Company resources used in the course of work for Alleghany remain the property of Alleghany and must be returned upon request by Alleghany and upon termination of employment.

We permit brief, limited personal communications that do not violate applicable laws or other Alleghany policies and that do not interfere with your job functions. Never use electronic resources for illegal purposes, such as downloading, copying or sending copyrighted materials (such as music and movies). Employees must also not knowingly transmit, view, generate, print, retrieve, download or store any communication of a discriminatory, defamatory, obscene, damaging (such as viruses), threatening or harassing nature, or any material that is inappropriate for the business environment (such as sexually oriented literature or pictures or internet rumors).

Alleghany respects the privacy of its employees consistent with all legal requirements. Nonetheless, we reserve the right to access at any time, with or without notice to employees, all Company telephone and Computer systems or any electronic messages or documents transmitted through the Company's systems; all files, desks, lockers or offices on Company premises; and any communications and records created at work or on Company-owned, issued or sponsored devices or with Company resources.

## Data Privacy

When handling personal data collected in the course of conducting business, Alleghany employees must comply with all applicable privacy and data security laws and ensure that any personal data is obtained properly, kept securely and used only for those business purposes for which the data was obtained. Because privacy laws vary in scope and complexity, depending on where you are doing business, employees who handle personal data are responsible for knowing and complying with applicable privacy and data security laws.

## Third Party Intellectual Property

We respect the intellectual property rights of our business partners and will not attempt to obtain their confidential information, or otherwise use their intellectual property, inappropriately. For Alleghany's protection, as well as your own, you should comply with the laws governing copyright, fair use of copyrighted material owned by others, trademarks and other intellectual property.



# International Business Practices

Money Laundering Prevention.............. 21

Economic Sanctions, Anti-Boycott Laws
and Export Control Laws ...................... 21

INDEX

GLOSSARY

ADMINISTRATION
OF THE CODE

INTERNATIONAL
BUSINESS
PRACTICES

SAFEGUARDING
OF INFORMATION
AND RESOURCES

INTEGRITY OF
FINANCIAL AND
OTHER COMPANY
RECORDS

ANTITRUST LAWS
AND COMPETITION

BRIBERY AND
CORRUPTION

CONFLICTS OF
INTEREST

WORKPLACE
ENVIRONMENT
AND CONDUCT

INTRODUCTION

A MESSAGE TO
ALL EMPLOYEES



# International Business Practices

**Money Laundering Prevention**

**Economic Sanctions, Anti-Boycott Laws and Export Control Laws**

## Money Laundering Prevention

Alleghany is committed to meeting its responsibilities to help prevent money laundering and terrorist financing. These responsibilities generally include identifying business partners, monitoring business partner activity and reporting suspicious or unusual activity consistent with applicable laws. You are required to abide by all applicable laws and Alleghany policies and procedures related to the financing of terrorist activities, narcotics trafficking and money laundering. Suspicious activity reporting requirements are time sensitive. Contact a Compliance Contact or the AlertLine as soon as you have a concern that activity might be unusual or suspicious.

## Economic Sanctions, Anti-Boycott Laws and Export Control Laws

In compliance with U.S. and other applicable economic sanctions programs, Alleghany employees are prohibited from conducting business with or benefiting designated governments, individuals and entities (such as suspected terrorists and narcotics traffickers), as well as individuals and entities that are located in, have certain dealings with, or are nationals or agents of, particular countries. To determine if a government, individual or entity is subject to these prohibitions, consult with a Compliance Contact.

Alleghany employees must also comply with U.S. anti-boycott laws that prohibit participation in boycotts unless sanctioned by the U.S. government. If you are asked to participate in, or to provide information that may be used for the furtherance of, such a boycott, report the matter immediately to a Compliance Contact or contact the AlertLine.

From time to time some countries impose controls on the export and the end use of certain products, technology, software and services. Since Alleghany is based in the U.S., we must know and follow U.S. import and export laws and regulations no matter where in the world we perform our work. We must also know and follow the laws and regulations of the countries in which we export or import products. To determine if exports or imports are subject to controls or prohibitions, consult with a Compliance Contact.

As a global company, Alleghany employees may be asked to follow economic sanctions or embargo laws of the country in which they are doing business. Since countries' laws may conflict, in such a situation it is important to contact a Compliance Contact.

HOME • PRINT

A MESSAGE TO ALL EMPLOYEES

INTRODUCTION

WORKPLACE ENVIRONMENT AND CONDUCT

CONFLICTS OF INTEREST

BRIBERY AND CORRUPTION

ANTITRUST LAWS AND COMPETITION

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

SAFEGUARDING OF INFORMATION AND RESOURCES

INTERNATIONAL BUSINESS PRACTICES

ADMINISTRATION OF THE CODE

GLOSSARY

INDEX



# Administration of the Code

Investigating Issues ...................................23

Disciplinary Action ..................................23

Signature and Acknowledgement ...........23

Waivers.....................................................23

Employment at Alleghany ......................23

INDEX

GLOSSARY

ADMINISTRATION
OF THE CODE

INTERNATIONAL
BUSINESS
PRACTICES

SAFEGUARDING
OF INFORMATION
AND RESOURCES

INTEGRITY OF
FINANCIAL AND
OTHER COMPANY
RECORDS

ANTITRUST LAWS
AND COMPETITION

BRIBERY AND
CORRUPTION

CONFLICTS OF
INTEREST

WORKPLACE
ENVIRONMENT
AND CONDUCT

INTRODUCTION

A MESSAGE TO
ALL EMPLOYEES

# Administration of the Code

**Investigating Issues**

**Disciplinary Action**

**Signature and Acknowledgement**

**Waivers**

**Employment at Alleghany**

## Investigating Issues

Alleghany takes all allegations of misconduct seriously. We will investigate each matter in a timely manner, make a determination whether the Code or the law has been violated and take appropriate action. Every reasonable effort will be made to maintain the confidentiality of any employee who raises a concern or reports a violation in good faith.

If you become involved in a Code investigation, you are required to cooperate fully with our investigation, including providing information, documents and personal interviews when requested. Failure to cooperate, including providing misleading responses, lying, destroying or altering records, or failing to respond promptly to requests for information by investigators is grounds for disciplinary action.

## Disciplinary Action

Any Alleghany employee who violates the Code or the law will be subject to appropriate disciplinary action. Failing to promptly report violations also may be a violation and may result in disciplinary action. Discipline may include warnings, change in duties or responsibilities, decrease in compensation, loss of employment-related benefits, termination of employment or civil or criminal charges in accordance with applicable laws and regulations.

## Signature and Acknowledgement

All new employees must sign an acknowledgement form confirming that they have read the Code and agree to abide by its provisions. All employees will be required to make similar acknowledgements on an annual basis. Failure to read the Code or sign the acknowledgement form does not excuse an employee from compliance with the Code.

## Waivers

Waivers of or exceptions to the Code will be granted only in rare circumstances. Waivers for executive officers of Alleghany Corporation will be considered by the Board of Directors and will be promptly disclosed in accordance with any applicable law. Waivers for all other employees will be considered by the President or Chief Executive Officer of your company, together with the General Counsel of Alleghany Corporation.

## Employment at Alleghany

The Code and other company policies are not a contract of employment. Nothing in the Code or other Alleghany policies should be construed as a promise of any kind, or as creating a contract regarding wages or any other working conditions. Alleghany employees have the right to terminate their employment relationship at any time for any reason or no reason; likewise, Alleghany has that same right to terminate the employment of any employee.

23

A MESSAGE TO ALL EMPLOYEES

INTRODUCTION

WORKPLACE ENVIRONMENT AND CONDUCT

CONFLICTS OF INTEREST

BRIBERY AND CORRUPTION

ANTITRUST LAWS AND COMPETITION

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

SAFEGUARDING OF INFORMATION AND RESOURCES

INTERNATIONAL BUSINESS PRACTICES

ADMINISTRATION OF THE CODE

GLOSSARY

INDEX



# Glossary

INDEX

GLOSSARY

ADMINISTRATION OF THE CODE

INTERNATIONAL BUSINESS PRACTICES

SAFEGUARDING OF INFORMATION AND RESOURCES

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

ANTITRUST LAWS AND COMPETITION

BRIBERY AND CORRUPTION

CONFLICTS OF INTEREST

WORKPLACE ENVIRONMENT AND CONDUCT

INTRODUCTION

A MESSAGE TO ALL EMPLOYEES

# Glossary

The Glossary defines some of the terms used in the Code. If these definitions or other words or phrases used in the Code are still unclear, please consult with a Compliance Contact.

**Bribe**

An offer or gift of anything of value or any advantage that is intended to improperly influence the actions of the recipient or other person(s). Local laws may impose broader definitions.

**Business Partner**

Any supplier, service provider, vendor, customer, contractor, consultant, representative or agent.

**Cash Equivalents**

Loans, stock, stock options, bank checks, travelers' checks, check or cash cards, gift certificates, money orders, investments securities or negotiable instruments.

**Close Relationship**

You are always presumed to be in a "close relationship" with members of your immediate family or household or someone with whom you are having an intimate relationship. In addition, if your relationship with a partner, cousin, more distant relative or friend could influence your objectivity, you should assume that you have a "close relationship" with that person as well.

**Company Resources**

These can be tangible and intangible items including, but not limited to, money or funds; company premises or facilities, equipment and supplies; products, computer systems and software, telephones, wireless

communication devices, copy and fax machines; mail service; company vehicles; patents, trademarks and copyrights; other proprietary information; and employees' time at work and work product.

**Confidential Information**

Information that is not known to the public or competitors or that might give competitors a market advantage.

**Economic Sanctions**

Financial restrictions imposed by governments or international bodies to try to isolate or impede a specified individual or jurisdiction for some specified purpose.

**Entertainment**

A meal or other event where the donor and donee are present (for example, attending a sporting event).

**Export**

Any tangible or intangible item that is sent from one country to another.

**Facilitation Payments**

Money or goods given to a low-level government employee to perform, or expedite the performance of, routine actions to which the company is entitled. For example, a $25 (USD) payment to a consular employee to process permits or visa applications where no such fee is officially required may be considered a facilitation payment.

**Gifts**

Anything of value for which you are not required to pay the retail or usual or customary cost. A gift may include money, goods, services, amenities, offers of employment, promises or rewards.

**Good Faith**

Honestly believing in what you're doing. For example, making an AlertLine report "in good faith" means that you honestly believe that there is or may be a violation of the Code – even if it turns out that you were wrong – and that you were not deliberately making a false report.

**Government Official**

Broadly defined as an employee of the government, including employees of any governmental department, agency, or state-owned or controlled company, as well as candidates for political office and political party officials, at a federal, state, municipal or local level. For example, employees of the judiciary, the military, police departments, public universities or hospitals or government-owned or controlled companies, as well as members of a royal family and employees of international non-governmental organizations, such as the United Nations or World Bank, can be considered government officials.

---

**ALLEGHANY CODE OF BUSINESS CONDUCT AND ETHICS**

25

HOME • PRINT

A MESSAGE TO ALL EMPLOYEES

INTRODUCTION

WORKPLACE ENVIRONMENT AND CONDUCT

CONFLICTS OF INTEREST

BRIBERY AND CORRUPTION

ANTITRUST LAWS AND COMPETITION

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

SAFEGUARDING OF INFORMATION AND RESOURCES

INTERNATIONAL BUSINESS PRACTICES

ADMINISTRATION OF THE CODE

GLOSSARY

INDEX

**ALLEGHANY CODE OF BUSINESS CONDUCT AND ETHICS**

# Glossary

### Harassment

Any action or behavior that makes someone feel intimidated, insulted, humiliated or threatened because of his or her race, color, national origin, ancestry, citizenship status, creed, religion, religious affiliation, age, sex, pregnancy, maternity, caring responsibility, marital status, civil partnership, sexual orientation, gender identity or expression, genetic information, disability, veteran status or any other status protected under applicable law. Harassment can be verbal, non-verbal, or physical. Examples of what may constitute harassment, if unwelcome and severe or pervasive, include, but are not limited to: the use of sexual, racial or ethnic slurs, jokes, or derogatory remarks; the use of insults, threats, literature, pictures or cartoons based on a protected characteristic; or any physical aggression based on a protected characteristic.

### Intellectual Property

Any patent, copyright, trade secret, trademark or other proprietary right, including but not limited to conceived inventions, technology, know-how, license and enforcement rights.

### Import

Any tangible or intangible item that is brought into one country from another.

### Kick-back

The return of a sum already paid or due to be paid as a reward for making or fostering business arrangements.

### Material Non-Public Information

Non-public information that would be considered important to a reasonable investor in deciding whether to buy, hold or sell a security. Examples include projections of future earnings or losses, or other earnings guidance; earnings that are inconsistent with the expectations of the investment community; a pending or proposed merger, acquisition or tender offer; a pending or proposed acquisition or disposition of a significant asset; a change in dividend policy, or an offering of additional securities; a significant change in key management.

### Money Laundering

Making money derived from unlawful activities "clean" by making it appear that the money comes from legitimate sources or transactions.

### Personal Data

Any information that can be used to identify, contact or locate an individual. Examples of personal data include, but are not limited to, a person's address, e-mail address, fax or phone number, financial information, government identification number, health or medical information, etc.

### Relative

A person's spouse; civil partner; parent; grandparent; child; grandchild; sibling; spouse of child; parent or sibling of a spouse; any person who resides in the same household or with whom the person has an intimate relationship.

### Retaliation

Taking adverse action against an employee in response to that employee's good faith report of a violation or other ethical or legal concern. Retaliation can take many forms, from being ignored to being unfairly dismissed. It might also involve being bullied with the aim of stopping a person from reporting a potential breach of the Code.

INDEX

GLOSSARY

ADMINISTRATION OF THE CODE

INTERNATIONAL BUSINESS PRACTICES

SAFEGUARDING OF INFORMATION AND RESOURCES

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

ANTITRUST LAWS AND COMPETITION

BRIBERY AND CORRUPTION

CONFLICTS OF INTEREST

WORKPLACE ENVIRONMENT AND CONDUCT

INTRODUCTION

A MESSAGE TO ALL EMPLOYEES

HOME • PRINT



Index

INDEX

GLOSSARY

ADMINISTRATION OF THE CODE

INTERNATIONAL BUSINESS PRACTICES

SAFEGUARDING OF INFORMATION AND RESOURCES

INTEGRITY OF FINANCIAL AND OTHER COMPANY RECORDS

ANTITRUST LAWS AND COMPETITION

BRIBERY AND CORRUPTION

CONFLICTS OF INTEREST

WORKPLACE ENVIRONMENT AND CONDUCT

INTRODUCTION

A MESSAGE TO ALL EMPLOYEES

# Index

Alcohol, abuse .......................................................... 7

AlertLine ........................................... 1, 5, 7, 16, 21

Anonymity ............................................................... 5

Anti-boycott, laws ................................................ 21

Anti-bribery .......................................................... 12

Antitrust ............................................................... 14

Bribery .................................................................. 12

Business partners .................... 4, 7, 10, 14, 18, 19, 21

Close relationship ......................................... 9, 25

Company resources, use of ..................... 9, 10, 19, 25

Confidentiality ..................................................... 23

Conflicts of interest ............................................... 9

Copyrighted materials ......................................... 19

Corruption ............................................................ 12

Decision making ..................................................... 4

Discrimination ........................................................ 7

Drug, abuse ............................................................ 7

Entertainment ...................................... 10, 12, 25

Export, controls .............................................. 21, 25

Fair employment ..................................................... 7

Financial Reporting ............................................. 16

Gifts ..................................................... 10, 12, 25

Government, relationships with ....... 12, 16, 21, 25

Harassment ........................................... 7, 10, 26

Information, protection of .................................... 18

Insider trading ..................................................... 18

Intellectual property ...................................... 19, 26

Import, controls ............................................. 21, 26

Kick-backs ...................................................... 12, 26

Opportunities, corporate ....................................... 9

Outside, activities ................................................... 9

Political activities and contributions .................. 10

Privacy, business partners ................................... 19

Privacy, employee ................................................ 19

Proprietary information ....................................... 18

Records ..................................................... 16, 19, 23

Relatives ........................................................... 9, 26

Reporting a concern .......................... 3, 5, 21, 23, 26

Retaliation ..................................................... 3, 5, 7, 26

Safety ...................................................................... 7

Sanctions, economic ....................................... 21, 25

Substance, abuse .................................................... 7

Supervisors .............................................................. 3

Threats, or violent behavior ............................ 7, 26

Trading, stocks ..................................................... 18

# EXHIBIT C

# Transatlantic Holdings, Inc. Director, Executive Officer and Senior Financial Officer Code of Business Conduct and Ethics

## I.  Introduction

This Code of Business Conduct and Ethics (this "Code") embodies the commitment of Transatlantic Holdings, Inc. and its subsidiaries (collectively, "TRH") to conduct its business with the highest ethical standards and in accordance with all applicable laws, rules and regulations of the countries in which TRH engages in business.  All members of TRH's Board of Directors (the "Board"), executive officers, and senior financial officers are expected to adhere to the principles and procedures set forth in this Code.

No code or policy can anticipate every situation that may arise.  Accordingly, this Code is intended to serve as a source of guiding principles for directors, executive officers, and senior financial officers.  Directors, executive officers, and senior financial officers are encouraged to bring questions about particular circumstances that may implicate one or more of the provisions of this Code to the attention of the Chairman of the Audit Committee of the Board (the "Audit Committee"), who may consult with inside or outside legal counsel as appropriate.

Directors, executive officers, and senior financial officers that are also TRH employees are also required to abide by TRH's Code of Conduct, which is not part of this Code.

## Part A

## II.  Honest and Candid Conduct

Each director, executive officer, and senior financial officer owes a duty to TRH to act with integrity.  Integrity requires, among other things, honesty and candor.

## III.  Conflicts of Interest

A "conflict of interest" occurs when an individual's personal interest is adverse to, or may appear to be adverse to, the interests of TRH as a whole.  A conflict of interest can arise when a director, executive officer, or senior financial officer takes actions or has interests that may make it difficult to perform his or her TRH work objectively and effectively.  A director, executive officer, or senior financial officer must never use or attempt to use his or her position at TRH to obtain any improper personal benefit, including loans or guarantees of obligations from any person or entity, for himself or herself, for his or her immediate family members, or for any other person.  A director's immediate family members includes the director's spouse, parents, stepparents, children, stepchildren, siblings, mother- and father-in-law, sons- and daughters-in-law, brothers- and sisters-in-law, and anyone (other than a domestic employee or tenant) who shares the director's home.

Each director, executive officer, and senior financial officer should avoid conflicts of interest between himself or herself and TRH.  Any director, executive officer, or senior financial officer who is aware of a transaction or relationship that involves, or could reasonably be expected to involve a conflict of interest should promptly disclose the situation to the Chairman of the Board or the Chairman of the Audit Committee to determine whether the transaction or relationship is in violation of this Code or the law and the appropriate steps to be taken.

This Code does not attempt to describe all possible conflicts of interest which could develop.  Some of the more common conflicts from which directors, executive officers, and senior financial officers must refrain, however, are set out below.

- *Relationship of TRH with third parties.*  Directors, executive officers, and senior financial officers may not engage in any conduct or activities that are inconsistent with TRH's best interests or that disrupt or impair TRH's relationship with any person or entity with which TRH has or proposes to enter into a business or contractual relationship.

2

- *Compensation from non-TRH sources.*  Directors, executive officers, and senior financial officers may not accept compensation (in any form) for services performed for TRH from any source other than TRH.

- *Gifts.*  Directors, executive officers, and senior financial officers and their immediate family members may not accept gifts from persons or entities who deal with TRH in those cases where acceptance of the gifts could create the appearance of a conflict of interest.

- *Personal use of TRH assets.*  Directors, executive officers, and senior financial officers may not use TRH assets, labor or information for personal use unless approved by the Chairman of the Audit Committee or as part of a compensation or expense reimbursement program available to all directors, executive officers, and senior financial officers.

## IV.  Corporate Opportunities

Each director, executive officer, and senior financial officer owes a duty to TRH to advance TRH's legitimate business interests when the opportunity to do so arises.  Each director, executive officer, and senior financial officer is prohibited from: (a) taking for him or herself or directing to a third party a business opportunity that is related to TRH's business; or (b) competing with TRH for business opportunities, *provided, however*, if TRH's disinterested directors determine that TRH will not pursue an opportunity that relates to TRH's business, a director, executive officer, or senior financial officer may do so.

## V.  Prohibition on Personal Loans

Section 13(k)(2) of the Securities and Exchange Act of 1934 prohibits, subject to certain exceptions, TRH from, directly or indirectly, extending, maintaining or arranging for the extension of credit, or renewing an extension of credit, in the form of a personal loan to or for any of TRH's directors or executive officers.  Any director, executive officer, or senior financial officer that becomes aware that TRH may be extending or arranging for

the extension of credit to a director or executive officer should discuss the situation with the Chairman of the Audit Committee to ensure that the extension of credit is in accord with this Code and the law.

## VI.  Confidentiality

In carrying out TRH's business, directors, executive officers, and senior financial officers often learn confidential or proprietary information about TRH, its customers, suppliers, or other third parties.  Directors, executive officers, and senior financial officers must maintain the confidentiality of all information so entrusted to them, from whatever source, except when disclosure is authorized or legally required.  For purposes of this Code, "confidential or proprietary information" of TRH or other companies includes all nonpublic information relating to TRH or a third party.

## VII.  Communications

Information provided by directors, executive officers, and senior financial officers to TRH must be full, fair, accurate, timely, and understandable.

## VIII.  Audits and Investigations

No director, executive officer, or senior financial officer shall take any action to fraudulently influence, coerce, manipulate, or mislead TRH's independent auditors or other investigators.

## IX.  Fair Dealing

TRH does not seek competitive advantages through illegal or unethical business practices.  Each director, executive officer, and senior financial officer is to deal fairly with TRH's customers, service providers, suppliers, competitors, and employees.  No director, executive officer, or senior financial officer may take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts, or any other unfair dealing practice.

## X.  Protection and Proper Use of Company Assets

All directors, executive officers, and senior financial officers should protect TRH's assets and help ensure their efficient use.  All TRH assets should be used for legitimate business purposes only.

## XI.  Compliance with Laws, Rules and Regulations; Fair Dealing

***General Compliance.***  It is TRH's policy to comply with all applicable laws, rules and regulations in the countries in which TRH engages in business.  It is the personal responsibility of each director, executive officer, and senior financial officer to adhere to the standards and restrictions imposed by those laws, rules, and regulations.  In some instances there may be a conflict between the applicable laws of two or more countries; if and when such a conflict is encountered, it is important to consult with the Chairman of the Audit Committee to determine how to resolve the conflict.  Transactions in TRH securities are governed by TRH's Insider Trading Policy.

***Fair Dealing.***  Directors, executive officers, and senior financial officers shall oversee fair dealing by employees and officers with TRH's customers, suppliers, competitors, and employees.

## Part B

***Application.***  For the purpose of this Code, "senior financial officer" means the chief executive officer, chief financial officer, and controller of TRH and the chief financial officer and controller of each significant TRH subsidiary.

***Standards.  All senior financial officers shall:***

> **A.**  Be familiar and comply with TRH's disclosure controls and procedures and internal controls over financial reporting to the extent relevant to his or her area of responsibility, so that TRH's reports and other documents filed, submitted or furnished to the Securities and Exchange Commission

("SEC") comply in all material respects with applicable federal securities laws and SEC rules and regulations;

**B.**  Provide full, fair, accurate, timely, and understandable disclosures in reports and documents that are filed with, or submitted or furnished to the SEC and other governmental agencies and in other public communications;

**C.**  Provide full, fair, accurate, timely, and understandable information, without misrepresenting or causing others to misrepresent, material facts about TRH to TRH's independent auditors; and

**D.**  Comply with laws, rules and regulations of national, state, provincial, and local governments and other appropriate regulatory agencies and self-regulatory bodies.

# Part C

## XII.  Amendments and Waivers of this Code

From time to time, TRH may amend certain provisions of this Code.  Waivers of this Code may be granted only by the Audit Committee or the Board after disclosure of all material facts by the director, executive officer, or senior financial officer seeking the waiver.  Any director, executive officer, or senior financial officer who believes that a waiver may be appropriate should discuss the matter with the Chairman of the Audit Committee.  Waivers will only be granted in exigent circumstances and any waiver or amendment to this Code will be promptly disclosed to the extent required by applicable law or the New York Stock Exchange rules.

## XIII.  Encouraging the Reporting of Any Illegal or Unethical Behavior

Directors, executive officers, and senior financial officers should promote ethical behavior and take steps to ensure TRH: (a) encourages employees to talk to

supervisors, managers, and other appropriate personnel when in doubt about the best course of action in a particular situation; (b) encourages employees to report violations of laws, rules, regulations, this Code, or TRH's Code of Conduct applicable to officers and employees to appropriate personnel; and (c) informs employees that TRH will not allow retaliation for reports made in good faith.

## XIV.  Compliance with this Code and Reporting

Directors, executive officers, and senior financial officers should strive to identify and raise potential issues under this Code before they become problems and should ask the Chairman of the Audit Committee about the application of this Code whenever in doubt. Any director, executive officer, or senior financial officer who becomes aware of any existing or potential violation of this Code shall promptly notify the Chairman of the Audit Committee.  The Audit Committee or a person or persons designated by the Audit Committee will investigate the suspected violation and will determine whether the transaction or relationship is in violation of this Code or the law.  The Chairman of the Audit Committee will ensure that TRH promptly takes appropriate disciplinary or preventive action as it deems appropriate to address any existing or potential violation of this Code brought to his or her attention, including notifying the appropriate enforcement authorities in the event of criminal or other violations of law.  If any provision of this Code is not permitted by the local laws of a country in which TRH engages in business, then the Chairman of the Audit Committee must be consulted and will determine whether there is a conflict and whether a waiver of this Code is necessary.  TRH will not tolerate retaliation for reports of violations of this Code made in good faith.

Any questions relating to how this Code should be interpreted or applied should be addressed to, and resolved by, the Chairman of the Audit Committee.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ILEANA DIAZ,

       Plaintiff,       1:16-cv-01355 (GBD)

   vs.

TRANSATLANTIC REINSURANCE COMPANY,

       Defendant.     **<u>CERTIFICATE OF SERVICE</u>**

   I hereby certify that on April 19, 2016, a copy of the foregoing Declaration of Marc E.

Bernstein was filed electronically and served by mail on anyone unable to accept electronic

filing.  Notice of this filing will be sent by email to all parties by operation of the Court's

electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the

Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Dated:  New York, New York
   April 19, 2016

             _____
             Marc E. Bernstein