**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ILEANA DIAZ,

       Plaintiff,

  -against-

TRANSATLANTIC REINSURANCE
COMPANY,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM DECISION
AND ORDER

16 Civ. 1355 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Ileana Diaz filed this action on February 22, 2016 against Defendant Transatlantic

Reinsurance Company ("TransRe") under the anti-retaliation provisions of the Dodd-Frank Act,

15 U.S.C. § 78u-6(h); the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A; the Family Medical

Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2); the New York State Human Rights Law

("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*; and the New York City Human Rights Law

("NYCHRL"), N.Y.C. Admin. Code § 8–107. Plaintiff also brings disability discrimination claims

under both the NYSHRL and NYCHRL, as well as a common law breach of contract claim.

In her Complaint, Plaintiff, a current employee of Defendant for at least nine years, asserts

that she has, in the course of her almost nine-year tenure, been subjected to discrimination

stemming from her treatment by Defendant upon taking medical leave, as well as to retaliation

resulting from her complaints to management about her supervisor, the Executive Vice President

("Executive VP") and Chief Claims Officer, whose responsibilities included oversight of

Defendant's Human Resources Department. (Compl., ECF No. 1, ¶¶ 72-114.) As a result of the

Defendant's course of action, Plaintiff alleges economic loss, severe mental anguish, and

emotional distress, pain, and suffering. (*See, e.g.,* Compl. ¶ 114.) Plaintiff seeks declaratory and injunctive relief, reinstatement to the position she would have occupied but for Defendant's alleged wrongful employment actions, compensatory and punitive damages plus prejudgment interest, expert and attorneys' fees, as well as any other "just and proper" relief. (Compl., Prayer for Relief.)

Defendant moves to dismiss the First and Seventh Causes of Action of the Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure12(b)(6). (Mot. to Dismiss, ECF No. 12; Def.'s Mem. in Supp. of Mot. to Dismiss ("Mem."), ECF No. 12, at 1.) [1]

Defendant's partial motion to dismiss is GRANTED. Plaintiff's First Cause of Action alleges that Defendant violated the whistleblower protection provision of the Dodd-Frank Act and the Sarbanes-Oxley Act by retaliating against her when she disclosed to Defendant's Compliance Department her concerns about the Executive VP's potential conflicts of interest. Plaintiff's Seventh Cause of Action for breach of contract is based on an alleged violation of the Company's Codes of Conduct, which prohibit retaliation against employees who report violations of the Codes in good faith.

## I.    **FACTUAL BACKGROUND**

Defendant, a reinsurance company, is a wholly-owned subsidiary of Transatlantic Holding, Inc., which is, in turn, a wholly-owned subsidiary of Allegheny Corporation, a publicly held corporation that issues multiple classes of securities that is subject to §§ 12 and 15(d) of the Securities and Exchange Act of 1934. (Compl. ¶ 6.) Defendant hired Plaintiff as a Senior Reinsurance Claims Examiner in July 2006. (*Id.* ¶ 8.) When Defendant promoted Plaintiff to

---

[1] The motion was fully submitted following the filing of Plaintiff's Opposition brief, ("Opp'n," (ECF No. 79)), and Defendants' Reply brief ("Reply," (ECF No. 81)).

Assistant Manager of the Claims Department to oversee the 1985 and Prior Claims Unit in September 2013, Plaintiff reported up a chain of command to the Claims Manager, who reported to the Executive VP.  (*Id.* ¶ 9-10.)

According to Plaintiff, among those whose work she supervised in her capacity as Assistant Manager of the Claims Department were the ex-wife of the Executive VP's husband and a cousin of the Executive VP, who Defendant employed as a Senior Claims Examiner at the time of Plaintiff's promotion.  (*Id.* ¶ 11.)  Defendant also used the Executive VP's husband's law firm to perform work "for Defendant on litigation matters," and Plaintiff alleges that she was "ultimately responsible for supervising [that] work . . . and approving bills and invoices . . . . " (*Id.*)

### A. Alleged Preferential Treatment and Plaintiff's Demotion

Plaintiff alleges a number of examples involving the Executive VP's relatives that Plaintiff contends constitute their preferential treatment by the Executive VP, giving rise to a purported conflict of interest.  (*Id.* ¶¶ 18-22.)  Such examples include that the ex-wife "did not have the experience and qualifications that Defendant typically requires for Claims Examiners, yet she is presumably paid a Claims Examiner salary."  (*Id.* ¶ 20.)  Similarly, "when conducting calendar year 2013 performance appraisals for [the cousin], Plaintiff's supervisor [the Claims Manager] required Plaintiff to change [the cousin's] rating from a 4 to a 5, the highest possible rating, presumably at the request of [the Executive VP] because [the Claims Manager] rarely worked with [the cousin] and had no basis to support changing [the cousin's] rating." (*Id.* ¶ 18e.)

In November 2014, Plaintiff raised her concerns with the Executive VP at a meeting to discuss Plaintiff's management of the 1985 and Prior Unit.  (*Id.* ¶¶ 23-25.)  Plaintiff received negative feedback about her management of the unit, but was offered the chance to stay in her position, "provided that [she] come up with a 'blueprint' of how [she] was going to 'turn things

3

around.'" (*Id.* ¶ 24-26.)  In the alternative, Plaintiff received an offer to manage another unnamed unit within the Claims Department.  (*Id.* ¶ 27.)  One week later, Plaintiff elected to move to the other department without knowing which department it was because "she felt her management . . . had already been undermined by [the Executive VP's] preferential treatment of [the cousin]." (*Id.* ¶ 29.)  According to Plaintiff, the department to which she was reassigned, the Fast Track Unit, "processed uncontested and straightforward claims." (*Id.* ¶ 31.) She therefore considered this a demotion. (*Id.*)

### B. Plaintiff's Reports to Compliance Directors

Plaintiff alleges that in December 2014, she reported to Defendant's Compliance Director these conflict of interest concerns regarding the Executive VP "assigning litigations [sic] to and ultimately being responsible for approving invoices for her husband's law firm." (*Id.* ¶¶ 12-14, 38.)  According to Plaintiff, because the Executive VP determined which reinsurance matters Defendant would litigate, the Executive VP would personally benefit from an increase in matters or fees paid to her husband's law firm. (*Id.* ¶ 12)  Plaintiff contends that in 2014, Defendant paid the law firm more than $13 million in legal fees, and as of the time she first reported her concerns to Defendant's Compliance Department, Plaintiff was not aware of any procedures to address the issues surrounding the law firm until June 2015, when the Defendant began to require that its legal department, not the Executive VP, approve all invoices to the husband's law firm. (*Id.* ¶¶ 13-14, 17.)

Plaintiff further alleges she again spoke with her Compliance Director and the Human Resources Director who reports to the Executive VP, on January 5, 2015. (*Id.* ¶ 40.)  Instead of interviewing Plaintiff's colleagues in the Claims Department, as Plaintiff contends she requested, they merely spoke to the Executive VP to investigate Plaintiff's reports, and concluded that the

husband's ex-wife and the cousin's employment did not constitute a conflict of interest. (*Id.* ¶¶ 40-41.)

Plaintiff also alleges that in March 2015, she made an official complaint to Defendant's parent company, Alleghany, via its Compliance Hotline, (*id.* ¶ 51), and, on April 22, 2015, met with Alleghany's Chief Compliance Officer to give more detail about the apparent conflicts of interest. (*Id.* ¶ 52-53.) Plaintiff also "expressed concern about . . . the effect [the Executive VP's purported conflicts of interest] could have on Alleghany's shareholders" and "on Defendant's reputation in the reinsurance industry," and that the favoritism shown was motivated by racial or national origin bias against Plaintiff who is Puerto Rican. (*Id.* ¶¶ 55, 57.)

### C. Alleged Retaliation Against Plaintiff

Plaintiff contends that the Defendant's Director, Executive Officer and Senior Financial Officer Code of Business Conduct and Ethics ("Senior Officer Code of Conduct") encourages employees to report potential violations, including conflicts of interest, (*id.* ¶ 37), and prohibits retaliation against reporting employees. (*Id.* ¶ 36.) Alleghany also has a Code of Conduct with similar provisions. (*See id.* ¶¶ 45-50.) Upon Plaintiff's information and belief, the Executive VP was aware of her complaints to both Defendant's and Alleghany's compliance groups. (*See id.* ¶¶ 59-60.) Plaintiff alleges that she communicated as much to Alleghany's Chief Compliance Officer in April 2015, stating that since Plaintiff's December 2014 and January 2015 reports to Defendant's Compliance Department, the Executive VP had denied Plaintiff a bonus/salary increase, questioned her expense reports, physically isolated her from colleagues, and generated pretextual reasons to discipline Plaintiff. (*Id.* ¶ 58.) Plaintiff also alleges that after her conversation with Alleghany, the Executive VP had "angry outbursts towards Plaintiff" on "an

almost daily basis," gave Plaintiff impossible-to-meet deadlines, and issued an "unfairly characterized" performance warning on May 7, 2015. (*Id.* ¶ 60.)

According to Plaintiff, at her physician's advice, she took designated FMLA leave starting May 8, 2015 to "recover from the stress, anxiety, and depression that resulted from [the Executive VP's] retaliatory treatment . . . ." (*Id.* ¶ 61.)   Plaintiff alleges that on August 14, 2015, she attempted to find out the exact date her FMLA leave was scheduled to end, but was not given any information by Defendant's representative. (*Id.* ¶ 65.) Defendant then notified Plaintiff on August 19, 2015 that "because she had allegedly not provided certain information [to an administrator], Defendant was treating Plaintiff has having resigned her employment." (*Id.* ¶ 66.) Plaintiff also alleges that Defendant only reinstated Plaintiff's employment, albeit in a less senior position, after Plaintiff's attorney intervened. (*Id.* ¶¶ 68-70.)   Plaintiff contends that since her return to the company, she continues to experience increased scrutiny and negative performance reviews from the Executive VP, ostensibly as retaliation for Plaintiff's previous reports. (*Id.* ¶ 71.)

## II.   **LEGAL STANDARD**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires pleading facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Thus, the factual allegations pleaded "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether Plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.; see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 CIV. 6909, 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013).   In deciding the 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the non-moving party's favor. *See Ahmad v. Morgan Stanley & Co.*, 2 F. Supp. 3d 491, 495 (S.D.N.Y. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

"In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Fishbein v. Miranda,* 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009), *aff'd sub nom. Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277 (2d Cir. 2014) (quoting *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *see also Hayes v. Coughlin,* No. 87 Civ. 7401, 1991 WL 220963, at *1 (S.D.N.Y. Oct. 16, 1991) ("Papers outside a complaint may be incorporated by reference into the complaint when such papers are referred to within the body of the complaint.").

## III.   THE DODD-FRANK ACT AND SARBANES-OXLEY ACT ARE INAPPLICABLE TO PLAINTIFF'S CLAIM.

Plaintiff's First Cause of Action alleges that Defendant violated the Dodd-Frank Act's "whitstleblower" protection provisions because she was retaliated against when she engaged in activities protected by the Dodd-Frank and Sarbanes-Oxley ("SOX") Acts. (*See* Compl., ¶¶ 72-78.)  Defendant correctly contends that this cause of action should be dismissed because Plaintiff

7

did not engage in activity protected by either Dodd-Frank or SOX, i.e., make disclosures to the

SEC, participate in an SEC investigation, or make disclosures to internal supervisors related to

mail, wire, or securities fraud.  (Mem., at 7-8.)

Under the Dodd-Frank Act, "[t]he term 'whistleblower' means any individual who

provides, or 2 or more individuals acting jointly who provide, information relating to a violation

of the securities laws to the Commission, in a manner established, by rule or regulation, by the

Commission." 15 U.S.C. § 78u-6(a)(6).  Furthermore, employers may not

> discharge, demote, suspend, threaten, harass, directly or indirectly, or in any
> other manner discriminate against, a whistleblower in the terms and
> conditions of employment because of any lawful act done by the
> whistleblower—
>
> (i) in providing information to the Commission in
> accordance with this section;
>
> (ii) in initiating, testifying in, or assisting in any
> investigation or judicial or administrative action of the Commission
> based upon or related to such information; or
>
> (iii) in making disclosures that are required or protected
> under the Sarbanes-Oxley Act of 2002 (15 U.S.C. § 7201, *et seq.*),
> this chapter, including section 78j-1(m) of this title, section 1513(e)
> of Title 18, and any other law, rule, or regulation subject to the
> jurisdiction of the Commission.

15 U.S.C. § 78u-6(h)(i-iii).  In turn, the relevant provision of SOX protects employees from

being discharged who:

> (1) . . . provide information . . . regarding any conduct which the employee reasonably
> believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank
> fraud], or 1348 [securities fraud], any rule or regulation of the [SEC], or any provision of
> Federal law relating to fraud against shareholders, when the information . . . is provided to
> . . . (C) a person with supervisory authority over the employee (or such other person
> working for the employer who has the authority to investigate, discover, or terminate
> misconduct) . . . .

*Yang v. Navigators Grp., Inc.*, 18 F. Supp. 3d 519, 527-28 (S.D.N.Y. 2014) (citing 18 U.S.C. § 1514A(a)(1)(C)). Thus, to engage in an activity protected under SOX, a plaintiff "must show that [s]he held a reasonable belief that Defendants were engaged in conduct that violated one of the *enumerated federal laws*" of § 1514A. *See Ashmore v. CGI Grp. Inc.*, 138 F. Supp. 3d 329, 342 (S.D.N.Y. 2015) (emphasis added). Additionally, a plaintiff's belief about those violations of relevant law must be both subjectively and objectively reasonable. *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 221 (2d Cir. 2014) (defining "objective" as whether "a reasonable person in [plaintiff's] position would have believed that the conduct constituted a violation" of the federal securities laws) (citing *Livingston v. Wyeth, Inc.*, 520 F.3d 344, 352 (4th Cir. 2008)); *Leshinsky v. Telvent GIT, S.A.*, 942 F. Supp. 2d 432, 444 (S.D.N.Y. 2013) (citing *Welch v. Chao*, 536 F.3d 269, 275 (4th Cir. 2008)).

Plaintiff's allegations ultimately fail to meet the 12(b)(6) standard for a whistleblower retaliation claim because Plaintiff has not alleged any facts regarding the Executive VP and Defendant's conduct that could support an objectively reasonable belief that such conduct constitutes securities fraud. *See Nielsen*, 762 F.3d at 221. None of her statements to Defendant or Alleghany's Compliance Departments involved providing false or fraudulent information to shareholders or the public. (*See* Compl. ¶ 55.) Nor does Plaintiff allege any intent to deceive shareholders. *See Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (holding that allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim and that "only where such allegations are coupled with evidence of 'corresponding fraudulent intent,' might they be sufficient") (citing *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999); *Chill v. General Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996)).

While Plaintiff claims that "[i]t is now well accepted that courts should construe Section 806 [or Section 1514A] broadly," Plaintiff has taken that statement out of context in support of her allegations. (*See* Opp'n, at 9.) A plain reading of the relevant Dodd-Frank and SOX provisions clearly show that the conduct reported by a whistleblower must deal with a violation of not any federal law, but of federal *securities* law or the enumerated crimes of mail and wire fraud. *See* 18 U.S.C. § 1514A(a)(1)(C) (providing that violations covered are those involving "any rule or regulation of the [SEC], or any provision of Federal law *relating to fraud against shareholders*") (emphasis added); 15 U.S.C. § 78u-6(h)(i-iii) (specifically noting that protected conduct must report violations of "any other law, rule, or regulation *subject to the jurisdiction of the [Securities and Exchange] Commission*").

As Defendant correctly argues, Plaintiff's Dodd-Frank claim is solely premised upon a purported non-compliance with the company's internal conflict of interest policy and the employment of the Executive VP's husband's relatives. (*See* Reply, at 3.) Even if Plaintiff may have believed she was reporting some sort of wrongdoing[2] when she made complaints to Defendant and Alleghany's Compliance Departments, the conduct she reported was not covered by Dodd-Frank's subsection (iii). *See Leshinsky*, 942 F. Supp. 2d at 444 (reasoning that by

---

[2] Plaintiff attempts for the first time in her Opposition papers to argue the following:

> [W]hile [she] did not specifically mention mail or wire fraud in her complaints to Defendant, her complaints implicate these sections because, if [the Executive VP's] conduct constituted fraud, it presumably involved the use of mail or wires to achieve this fraud.

(Opp'n at 15.) However, because Plaintiff failed to raise allegations of mail or wire fraud properly in her Complaint, they are not properly before this Court and need not be considered. *See Franchino v. Roman Catholic Archdiocese of New York*, No. 15 CV 6299, 2016 WL 3360525, at *7 n.11 (S.D.N.Y. June 15, 2016) (citing *K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n. 8 (S.D.N.Y. 2013) (holding that plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss")). In any event, such a conclusory allegation would not cure the Complaint's deficiency in this regard, and therefore such an amendment would be futile.

"'extending the reach of the whistleblower protection to violations of *any provision of federal law relating to fraud against securities shareholders*,' [§ 1514A] clearly protects employees who report any of the enumerated federal crimes") (emphasis added) (citing *O'Mahony v. Accenture Ltd.*, 537 F. Supp. 2d 506, 517 (S.D.N.Y. 2008)). Plaintiff's bald assertions that she "expressed concern about . . . the effect [the purported conflicts of interest] could have on Alleghany's shareholders" and "on Defendant's reputation in the reinsurance industry" are precisely the type of conclusory statements that cannot sustain a § 1514A claim. *See Andaya v. Atlas Air, Inc.*, No. 10 CV 7878, 2012 WL 1871511, at \*4 (S.D.N.Y. Apr. 30, 2012) ("What is missing from these allegations is criminal conduct, shareholder fraud, or fraudulent intent.") (citing *Novak*, 216 F.3d at 309); (*see* Compl. ¶ 55).

Defendant's motion to dismiss Plaintiff's Dodd-Frank and SOX whistleblower retaliation claim is therefore GRANTED.

## IV.   THE ALLEGHANY CODE OF CONDUCT AND SENIOR OFFICER CODE ARE NOT CONTRACTS.

Plaintiff Seventh Cause of Action is a breach of contract claim based on the Alleghany Code of Conduct and on the TransRe Senior Officer Code. (*See* Compl. ¶¶ 112-14.) Specifically, Plaintiff claims that Defendant breached an obligation under the Code of Conduct to "prevent retaliation against any employee who, in good faith, voices concerns, reports violations, or participates in an investigation." (*See id.* ¶ 50; Decl. of Marc E. Bernstein ("Bernstein Decl."), Ex. B, ECF No. 13, at 5, 26.) Plaintiff also claims that Defendant breached the TransRe Senior Officer Code's similar promise to protect her from retaliation. (Opp'n, at 16 (citing Compl. ¶ 36) ("[TransRe] will not tolerate retaliation for violations of this Code made in good faith.").)

Under New York law, a breach of contract claim is established through proof of "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4)

11

damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (internal citations omitted). However, New York law is also clear that employment guides or codes of conducts may not provide the basis for breach of contract claims when they contain language of disclaimer. *Lobosco v. New York Tel. Co./NYNEX*, 96 N.Y.2d 312, 317 (2001) ("Routinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements . . . It would subject employers who have developed written policies to liability for breach of employment contracts upon the mere allegation of reliance on a particular provision. Clearly that cannot be, especially in light of conspicuous disclaiming language."); *see also Baron v. Port Auth. of New York & New Jersey*, 271 F.3d 81, 86 (2d Cir. 2001) (rejecting appellant's argument that "a general disclaimer in an employee handbook does not as a matter of law foreclose a finding that specific provisions within the handbook are 'express limitations'"); *Sharkey v. J.P. Morgan Chase & Co.*, No. 10 Civ. 3824, 2011 WL 135026, at *9 (S.D.N.Y. Jan. 14, 2011) ("Where a manual or policy statement contains a disclaimer that nothing in the manual is intended to create a contract, an employee cannot bring a breach of contract claim based on the manual or policy statement.") (citing *Baron*, 271 F.3d at 85–86). Furthermore, "[a]n employee seeking to rely on a provision arguably creating a promise must also be held to reliance on the disclaimer." *Lobosco*, 96 N.Y.2d at 317.

Most fatal to Plaintiff's breach of contract claim is the language of the Alleghany Code of Conduct itself, which states that it is "not a contract of employment" and that nothing in the company's policies "should be construed as a promise of any kind, or creating a contract regarding wages or other working conditions." (*See* Bernstein Decl., Ex. B, ECF No. 13, at 23.) While Plaintiff contend that the Senior Officer Code does not contain such language of disclaimer, (*see* Opp'n at 16 n.2), the fact that the Alleghany Code of Conduct applies to the "Alleghany

Corporation and its subsidiaries worldwide," rebuts Plaintiff's argument. Additionally, as Defendants correctly note, Plaintiff does not allege that she did not understand this language located in the "Employment at Alleghany" section of the Code, nor does she allege that she relied upon any provision of the Codes. (*See* Reply, at 8.)

Therefore, Plaintiff has failed to allege breach of contract claims that survive a motion to dismiss pursuant to 12(b)(6). Defendant's motion to dismiss this claim is therefore GRANTED.

## V.    **CONCLUSION**

Plaintiff has failed to state a claim for whistleblower retaliation in violation of the Dodd-Frank Act and Sarbanes-Oxley Act or a claim for breach of contract. Defendant's motion to dismiss the First and Seventh Causes of Action of the Complaint is GRANTED. The First and Seventh Causes of Action are hereby dismissed.

The Clerk of Court is directed to close the motion at ECF No. 11.

Dated: New York, New York
      June 21, 2016                SO ORDERED.

                                      GEORGE B. DANIELS
                                      United States District Judge